**CARMEN A. TRUTANICH,** City Attorney (SBN 86629)
**KENNETH T. FONG,** Deputy City Attorney (SBN 140609)
**MICHAEL J. BOSTROM,** Deputy City Attorney (SBN 211778)
Room 701, City Hall East
200 North Main Street
Los Angeles, California 90012
Telephone Number: 213.978.8068
Fax Number: 213.978.8214
Email:  Michael.Bostrom@lacity.org

Attorneys for Defendant
City of Los Angeles

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF LOS ANGELES

| | |
|---|---|
| PARAMOUNT CONTRACTORS AND DEVELOPERS, INC., a California corporation, et al. | Case No.: CV-08-05653 ABC (JWJx) (Honorable Audrey B. Collins) |
| Plaintiffs, | **DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS** |
| vs. | **FIRST AMENDED COMPLAINT, OR** |
| CITY OF LOS ANGELES, a California municipal corporation and DOE 1 through DOE 10, inclusive, | **IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT, OR IN THE** |
| Defendants. | **ALTERNATIVE MOTION TO STAY CERTAIN CLAIMS** |
| | Date:    January 10, 2011 |
| | Time:    10:00 a.m. |
| | Place:   Courtroom 680 |

1

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**NOTICE IS HEREBY GIVEN** that on January 10, 2010, or as soon thereafter as the matter may be heard in the above-entitled Court located at 255 East Temple Street, Los Angeles, CA 90012, Courtroom 680, Defendant City of Los Angeles ("City") will and hereby does move to dismiss Plaintiffs Paramount Contractors and Developers, Inc., Sunset Blvd. Properties, LP, Bradley Folb, and Patricia High's (collectively, "Plaintiffs") First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  In the alternative, the City will and hereby does move for a more definite statement of pleading pursuant to Rule 12(e), and/or to stay certain claims under the *Younger* abstention doctrine.  This motion is made on the grounds that Plaintiffs have failed to state a claim upon which relief can be granted; Plaintiffs seek relief for claims that are not ripe; Plaintiffs lack standing for some of their claims; some of Plaintiffs' claims are so vague and ambiguous that the City cannot reasonably prepare a response; and some of Plaintiffs' claims interfere with an ongoing civil enforcement action pending in state court.  This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, and the concurrently filed Declaration of City Planner Blake Lamb.  This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 8, 2010.

Dated: November 17, 2010          **CARMEN A. TRUTANICH,** City Attorney
                                  **KENNETH T. FONG** , Deputy City Attorney
                                  **MICHAEL J. BOSTROM**, Deputy City Attorney



                                  By:/S/Michael J. Bostrom
                                    Michael J. Bostrom
                                    Deputy City Attorney
                                  Attorneys for Defendant
                                  CITY OF LOS ANGELES

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

INTRODUCTION ................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .......................................................3

    I.       THE FIRST PARAMOUNT LAWSUIT ("*PARAMOUNT I*").......................3

    II.      THE SECOND PARAMOUNT LAWSUIT ("*PARAMOUNT II*") ...............4

    III.   THE INTERIM CONTROL ORDINANCES .........................................5

    IV.   THE CITY'S AMENDED CITY-WIDE SIGN REGULATIONS ................5

    V.    THE CITY'S CIVIL ENFORCEMENT ACTION .........................................5

    VI.   THE NINTH CIRCUIT'S *WORLD WIDE RUSH* DECISION......................6

    VII.  THE AMENDED HOLLYWOOD SUD.........................................................6

    VIII. THE FAC ...........................................................................................7

ARGUMENT ........................................................................................................................7

    I.       PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE
            RELIEF CONCERNING THE ORIGINAL HOLLYWOOD SUD AND
            THE ICOS ARE MOOT ....................................................................... 7

    II.      PLAINTIFFS' CHALLENGES TO THE ICOS ALSO FAIL UNDER
            GOVERNMENT CODE SECTION 65010.................................................. 9

    III.   PLAINTIFFS HAVE FAILED TO STATE A RIPE CLAIM FOR
            DAMAGES UNDER THE ORIGINAL HOLLYWOOD SUD OR THE
            ICOS ................................................................................................. 10

    IV.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM CONCERNING
            THE CITY-WIDE SIGN REGULATIONS LOCATED IN THE
            MUNICIPAL CODE ......................................................................... 12

    V.      PLAINTIFFS' CHALLENGES TO THE AMENDED HOLLYWOOD
            SUD FAIL AS A MATTER OF LAW......................................................... 16

i

A.      The Amended Hollywood SUD Does Not Grant Unfettered Discretion To Approve Supergraphic Signs ..................................... 16

B.      The Amended Hollywood SUD Satisfies The *Central Hudson* Test ........................................................................................... 18

C.      Plaintiffs' As Applied Challenge To The Amended Hollywood SUD Fails To State A Claim ............................................... 20

VI.     PLAINTIFFS' TAKINGS CLAIMS SHOULD BE DISMISSED ...............21

A.      Plaintiffs' Takings Claims Are Not Ripe ......................................... 21

B.      Plaintiffs' Takings Claims Also Fail On The Merits ...................... 22

VII.    PLAINTIFFS' SELECTIVE PROSECUTION CLAIMS SHOULD BE DISMISSED .................................................................................................22

VIII.   PLAINTIFFS' REMAINING EQUAL PROTECTION CLAIMS SHOULD ALSO BE DISMISSED ..................................................................................23

IX.     IN THE ALTERNATIVE, MANY OF PLAINTIFFS CLAIM SHOULD BE STAYED UNDER THE *YOUNGER* ABSTENTION DOCTRINE ............24

X.      CONCLUSION ............................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*A Local & Regional Monitor v. City of Los Angeles*,
  12 Cal. App. 4th 1773 (1993)..................................................................22

*Avco Community Developers, Inc. v. South Coast Regional Com.*,
  17 Cal. 3D 785 (1976)..........................................................................17

*City of New Orleans v. Dukes*,
  427 U.S. 297 (1976)........................................................................19, 24

*City of West Hollywood v. Beverly Towers, Inc.*,
  52 Cal. 3D 1184 n. 6 (1991)...................................................................17

*Clear Channel Outdoor, Inc. v. City of Los Angeles*,
  340 F.3d 810 (9th Cir. 2003)..................................................................14

*Covenant Media of California, LLC v. City of Huntington Park*,
  377 F. Supp. 2d 828 (C.D. Cal. 2005).........................................................7

*Digital Props v. City of Plantation*,
  121 F.3d 586 (11th Cir. 1997).................................................................11

*First English Evangelical Lutheran Church v. County of Los Angeles*,
  482 U.S. 304 (1987)............................................................................21

*Foti v. City of Menlo Park*,
  146 F.3d 629 (9th Cir. 1998)..................................................................20

*Geary v. Renne*,
  880 F.2d 1062 (9th Cir. 1989).................................................................23

*Get Outdoors II, LLC v. City of San Diego*,
  506 F.3d 886 (9th Cir. 2007).............................................................12, 13

*Gilbertson v. Albright*,
  381 F.3d 965 (9th Cir. 2004)..................................................................24

iii

*Kokkonen v. Guardian Life Ins. Co. of America*,
   511 U.S. 375 (1994) ..................................................................................11

*National Advertising Co. v. City of Miami*,
   402 F.3d 1335 (11th Cir. 2005),..............................................................10

*North Star Int'l v. Arizona Corp. Comm'n*,
   720 F.2d 578 (9th Cir. 1983) .....................................................................23

*Outdoor Media Group, Inc. v. City of Beaumont*,
   506 F.3d 895 (9th Cir. 2007)...........................................................7, 8, 18

*Reno v. American-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999) ..................................................................................22

*Roberts v. Corrothers*,
   812 F.2d 1173 (9th Cir. 1987) ................................................................12

*Rubin v. City of Santa Monica*,
   308 F.3d 1008 (9th Cir. 2002 ..................................................................23

*S. Or. Barter Fair v. Jackson County*,
   372 F.3d 1128 (9th Cir. 2004) ...................................................................17

*Shelter Creek Dev. Corp. v. City of Oxnard*,
   838 F.2d 375 (9th Cir. 1998) ..................................................................10

*Southern Pacific Transp. Co. v. Los Angeles*
    922 F.2d 498 (9th Cir. 1990) ..................................................................21

*Stock West, Inc. v. Confederated Tribes*,
   873 F.2d 1221 (9th Cir. 1989) ................................................................11

*United States v. Sutcliffe*,
   505 F.3d 944 (9th Cir. 2007) ..................................................................22

*Williamson County Regional Planning Comm'n v. Hamilton Bank*,
   473 U.S. 172 (1985) ..................................................................................21

*World Wide Rush v. City of Los Angeles*,
   606 F.3d 676 (9th Cir. 2010) ...........................................................passim

iv

*World Wide Rush, LLC v. City of Los Angeles,*

  563 F. Supp. 2d 1132 (C.D. Cal. 2008)......................................................4, 5, 7, 11

*Younger v. Harris*,

  401 U.S. 37 (1971) ...............................................................................................2, 3, 24

**Rules**

Fedral Rules of Civil Procedure:

  Rule 12(b)(1) ...................................................................................................11, 13

  Rule 12(b)(6) ...............................................................................2, 13, 15, 20

  Rule 12(e) ...............................................................................................................13

**Statutes**

Government Code:

  Section 65010 ................................................................................................1, 9, 10

  Section 65010(b) ..................................................................................................9

  ISection 65858 ......................................................................................................9

  Section 65858 (a) ...............................................................................................9

  Section 65866 ....................................................................................................17

  Section 66598.1 ................................................................................................17

Los Angeles Municipal Code:

  Section 11 ..............................................................................................................6

  Section 11.5.7 ....................................................................................................11

  Section 14.4.2 ....................................................................................................14

  Section 14.4.4 B (9).......................................................................................6, 12

  Section 14.4.4 B (10)........................................................................................13

  Section 14.4.4(B)(11)........................................................................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In this case, the billboard industry yet again throws the kitchen sink at the City's sign regulations. Plaintiffs' FAC, however, is largely a rehashing of claims already raised and rejected in *World Wide Rush I* and *III*, *Liberty Media*, and *Vanguard*.  Like these other suits, the FAC challenges the City's bans on off-site and supergraphic signs as unconstitutional prior restraints that grant the City unfettered discretion to permit signs through specific plans, supplemental use districts, and development agreements. The FAC also alleges that the City's bans violate *Central Hudson* because they operate to prohibit Plaintiffs' proposed supergraphic signs, but allow supergraphic signs at other locations in the City. And the FAC alleges that the City may not distinguish between on site and off site messages.  All of these claims should be dismissed.

Additionally, Plaintiffs seek declaratory and injunctive relief concerning laws that no longer exist, such as the original Hollywood SUD, and the ICOs.  These claims should be dismissed as moot.  As for the ICOs, like the plaintiffs in *Liberty Media,* Plaintiffs attack the procedures the City followed in adopting the ICOs, but fail to make the requisite showing under Government Code Section 65010 that any procedural error caused them substantial injury or that a different result would have been likely without the alleged procedural error.

Like in *World Wide Rush III*, Plaintiffs pepper the FAC with general allegations that they "sought" permits from the City, which they claim the City refused to process, and then assert damages claims for the alleged denial of these permits.  Plaintiffs, however, offer no facts describing the signs they allegedly applied for (i.e., number of signs, size, location, materials, or method of installation), nor do they make any showing suggesting that the City ever formerly denied their alleged applications.  The Declaration of City Planner Blake Lamb, filed as part of the City's 12(b)(1) motion, confirms that Plaintiffs never submitted an application for supergraphic signs with the City, which was required in order to proceed under the original Hollywood SUD.  Thus,

just as in *World Wide Rush III*, Plaintiffs have failed to present a ripe claim for damages.

Plaintiffs borrow another claim from *World Wide Rush III* when they assert a vested right to install new signs based on the City's alleged bad faith refusal to approve their alleged applications.  Yet because Plaintiffs never obtained building permits, and because the Amended Hollywood SUD prohibits new supergraphic signs, Plaintiffs' vested rights claim are barred by the Ninth Circuit's *Outdoor Media* decision.

With respect to the Amended Hollywood SUD, Plaintiffs argue that it is an unconstitutional prior restraint because it exempts from the ban developments that have vested rights under California law.  Shockingly, Plaintiffs have even hauled the State of California into this lawsuit based on their claim (among others) that California's vested rights law, much of which is common law, is too vague.  (FAC, ¶ 49(b)(3).)  California's vested rights law, however, does not grant unfettered licensing discretion and does not violate the First Amendment.

Plaintiffs also claim that the Amended Hollywood SUD violates the *Central Hudson* test for commercial speech regulations because it exempts from the supergraphic sign ban those projects that were approved on or before November 12, 2008 (the date that the Planning Department first held a widely noticed hearing on the City's intent to amend the Hollywood SUD), and because it continues to allow a variety of other types of signs such as portable sidewalk signs and signs on street lamps in the Hollywood area.  Yet these are precisely the sort of legislative decisions that the Ninth Circuit held are entitled to significant deference in its recent *Metro Lights* and *World Wide Rush* decisions.  They do not violate the *Central Hudson* test.

Plaintiffs also bring a selective enforcement claim against the City concerning an ongoing civil enforcement action the City is prosecuting against them in state court.  Plaintiffs claim that the City only files enforcement actions against those who sue it in federal court.  Plaintiffs' claim should be dismissed under Rule 12(b)(6) because the Court may take judicial notice of the numerous *criminal* complaints the City Attorney's

Office has filed against billboard scofflaws who never sued the City, while here the City only sued Plaintiffs *civilly*.

Finally, to the extent this Court decides that it is improper to dismiss Plaintiffs' claims, then all of Plaintiffs' claims (save for its claims challenging the original Hollywood SUD and the Amended Hollywood SUD, which are not at issue in the civil enforcement action) should be stayed under the *Younger* abstention doctrine. Such a stay is necessary to avoid interfering with the ongoing state proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    THE FIRST PARAMOUNT LAWSUIT ("*PARAMOUNT I*")

Paramount originally filed suit against the City on January 5, 2007, seeking a judicial determination authorizing it to install permanent supergraphic signs at 6464 and 6565 Sunset Blvd (the "Sunset Properties"). (City's Request for Judicial Notice ("RJN"), Ex. 1.) Generally speaking, Paramount alleged that the City's regulations for supergraphic signs at the Sunset Properties were content based and/or granted the City unfettered permitting discretion. Additionally, Paramount alleged that the City discriminated in its enforcement of its regulations. (Id.) On July 24, 2007, after conducting a thorough review of all regulations governing the Sunset Properties, including the City's Hollywood SUD, and the Los Angeles Community Redevelopment Agency's ("CRA")[1] Amended Design For Development For Signs In Hollywood (the "ADD"), the Court issued an Order dismissing all but one of Paramount's facial challenges. The Order, however, left all of Paramount's as-applied challenges intact. (RJN, Ex. 2.) On June 6, 2008, the Court granted the City's Motion for Summary Judgment, disposing of Paramount's remaining facial challenge to the Hollywood SUD and the ADD, and disposing of all of Paramount's as-applied challenges. (RJN, Ex. 3.)

---

[1]The CRA is a state agency that was not a party to *Paramount I*. Paramount has only recently named the CRA in connection with the FAC.

3

Paramount appealed the Court's judgment to the Ninth Circuit, and that appeal is still pending.[2]

## II.   THE SECOND PARAMOUNT LAWSUIT ("*PARAMOUNT II*")

On June 9, 2008, this Court entered a preliminary injunction in the *World Wide Rush* case prohibiting the City from enforcing its City-wide ban on off-site and supergraphic signs on the ground that the City had unfettered discretion to allow such signs via legislatively adopted specific plans, supplemental use districts, or development agreements.  *See World Wide Rush, LLC v. City of Los Angeles,* 563 F. Supp. 2d 1132 (C.D. Cal. 2008).  The Court issued a permanent injunction on August 20, 2008.  *See World Wide Rush, LLC v. City of Los Angeles,* 2008 U.S. Dist. LEXIS 105651 (C.D. Cal., Aug. 20, 2008).

Seeking to take advantage of the *World Wide Rush* plaintiffs' success, on August 28, 2008, Paramount filed this second suit against the City ("*Paramount II*").  Paramount alleged that on or about June 23, 2008, it had "submitted applications to the City for the right to maintain supergraphics on the Sunset Properties," but that the "City refused to accept the application or to process them" in reliance on the City-wide bans on off-site and supergraphic signs that the Court struck down in *World Wide Rush*.  (Original Complaint, ¶ 11.)

On October 8, 2008, the City moved to dismiss the Complaint, or, in the alternative, to stay it pending the resolution of the Paramount I appeal.  (Docket #7.)  On October 28, 2008, the Court issued an Order staying this action.  The Court's Order stated that "Paramount's opposition [to the City's motion to dismiss] makes it abundantly clear that the basis for its renewed attack on the City's billboard policies is the ruling in World Wide.  Paramount's Opposition brief opens with the ruling in World

---

[2]The Ninth Circuit granted the City's motion to stay the appeal in *Paramount I* pending resolution of the *World Wide Rush* appeal.  Concurrently with this Motion to Dismiss, the City is also filing a motion with the Ninth Circuit to dismiss the *Paramount I* appeal as moot in light of the recent amendment to the Hollywood SUD.

Wide and repeatedly relies on the World Wide order."  (Docket # 11.)  The Court,
therefore, ordered this case stayed until resolution of the *World Wide Rush* appeal.  (Id.)

## III.    THE INTERIM CONTROL ORDINANCES

In an effort to restrain the massive proliferation of unpermitted signs in the wake
of the *World Wide Rush* ruling, on December 17, 2008, the City adopted interim control
ordinance number 180445 (the "ICO").  The ICO took effect on December 26, 2008,
and prohibited the installation of any new off-site or supergraphic signs, except those
vested under California law.  (RJN, Ex. 4.)  The ICO did not contain the exceptions for
signs authorized by a specific plan, supplemental use district, or development agreement
that were held invalid in *World Wide Rush*.  On June 9, 2009, City Council adopted ICO
No. 180745, continuing the moratorium on new off-site and supergraphic signs for an
additional 90 days after the expiration of Ordinance No. 180445, or until a permanent
ordinance which amended the citywide provisions governing off-site and supergraphic
signs became effective.  (RJN, Ex. 5.)

## IV.    THE CITY'S AMENDED CITY-WIDE SIGN REGULATIONS

On August 7, 2009, the City Council adopted ordinance number 180841,
amending the City-wide ban on off-site and supergraphic signs contained in the
Municipal Code.  The amended bans retained the original exceptions for signs
authorized pursuant to specific plans, supplemental use districts, and development
agreements, but stated that those exceptions would become operative only to the extent
that they were "deemed constitutional upon the reversal of the trial court decision in the
case of *World Wide Rush, LLC v. City of Los Angeles*, United States District Court Case
No. CV 07-238 ABC."  (RJN, Ex. 6.)  Ordinance number 180841 took effect on August
14, 2009.  (Id.)

## V.    THE CITY'S CIVIL ENFORCEMENT ACTION

On May 4, 2010, the City Attorney, on behalf of the People of the State of
California and the City of Los Angeles, filed a civil enforcement action against
Plaintiffs and others for maintaining billboard signs in violation of California's Unfair

Competition Law, California's Public Nuisance Law, the California Outdoor Advertising Act, and Los Angeles Municipal Code.  (RJN, Ex. 7.)  Because the enforcement action was filed while the *World Wide Rush* trial court ruling was still in force, the People and the City made clear that "Plaintiffs only seek to enforce the amended versions of section 14.4.4(B)(9) and (B)(11) — the constitutionality of which has not been challenged in a legal action — and only as to supergraphic and off-site signs erected after August 14, 2009 (the date on which the new sections became effective).  Plaintiffs do not seek to enforce the prior versions of sections 14.4.4(B)(9) or (B)(11) that were the subject of the August 2008 order and are no longer law."  (Id., p. 23 fn. 6.)

## VI.    THE NINTH CIRCUIT'S *WORLD WIDE RUSH* DECISION

On May 26, 2010, the Ninth Circuit issued its published decision in the *World Wide Rush* case.  *See World Wide Rush v. City of Los Angeles*, 606 F.3d 676 (9th Cir. 2010).  The Ninth Circuit reversed the trial court decision and found that the City's ban on off-site and supergraphic signs do not create unfettered permitting discretion in violation of the First Amendment.  *Id.*  The Ninth Circuit also held that the City can maintain a ban on off-site and supergraphic signs in certain parts of the City, but create sign districts or other exceptions to the ban without violating *Central Hudson*.  The Ninth Circuit issued its mandate on July 15, 2010.  (RJN, Ex. 8)  With the issuance of the mandate, the Ninth Circuit's decision became final and the original exceptions to the bans on off-site and supergraphic signs revived by operation of law.  This meant that the original Hollywood SUD again took effect.

## VII.   THE AMENDED HOLLYWOOD SUD

On September 28, 2010, the City Council adopted ordinance number 181340, amending the Hollywood SUD.  The amended Hollywood SUD prohibits new supergraphic signs.  (RJN, Ex. 9, § 5 B.)  The only exceptions are for those projects with vested rights under California law, and grandfathered projects that were approved on or before November 12, 2008 (the first date that the Planning Department held a

public hearing on the City's intent to amend the Hollywood SUD).  (Id., § 6 K; Legislative Findings Supporting Ordinance No. 181340, RJN, Ex. 10, F-4, F-5.)

## VIII.  THE FAC

Plaintiffs filed the FAC on October 26, 2010.  Plaintiffs allege that this lawsuit stems from their attempts to secure rights to maintain supergraphic signage on the exterior walls of the Sunset Properties.  (FAC, ¶ 12.)  Plaintiffs assert First Amendment, Equal Protection, and Takings claims.  As for relief, Plaintiffs seek an incredibly broad declaration that each and every one of the City's sign regulations violates the Constitution; an injunction prohibiting the City from enforcing each and every one of its signs regulations; a permit allowing supergraphic signs at the Sunset Properties (without elaboration as to number, size, location, or materials), and consequential, damages, general damages, punitive damages[3], and lost profits.  (FAC, Prayer for Relief.)

## ARGUMENT

## I.   PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF CONCERNING THE ORIGINAL HOLLYWOOD SUD AND THE ICOS ARE MOOT

The law is well settled that the legislative repeal of a challenged law moots all claims for prospective relief, including claims for declaratory and injunctive relief. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 901 (9th Cir. 2007) ("Because there is no longer any risk that Outdoor Media will be subject to the challenged ordinance, there exists no live issue upon which the court could issue prospective relief."); *Covenant Media of California, LLC v. City of Huntington Park*, 377 F. Supp. 2d 828 (C.D. Cal. 2005) (repeal of challenged sign ordinance moots plaintiffs' request for injunctive relief); November 9, 2009 Order Granting Defendant's Motion for More Definite Statement, Or, In the Alternative, To Dismiss, *World Wide*

---

[3] Plaintiffs appear to forget that "a municipality is immune from punitive damages under 42 U. S. C. § 1983."  *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981).

7

1    *Rush, LLC v. City of Los Angeles*, CV 09-3793 ABC ("*World Wide Rush III*"), City's

2    RJN, Ex. 11, pp. 221-24 (same).

3        Here, the original Hollywood SUD and the ICOs have been replaced with the

4    Amended Hollywood SUD, which bans new supergraphic signs.  (City's RJN, Ex. RJN,

5    Ex. 9, § 5 B.)  Plaintiffs' claims for injunctive and declaratory relief with respect to

6    these laws are, therefore, moot and should be dismissed.

7        This rule also defeats Plaintiffs claims that they "should be deemed to have

8    'vested' rights to supergraphic signage by reason of Defendants' unlawful denials

9    and/or refusals to process their signage permit applications." (FAC ¶ 44.)  In *Outdoor*

10   *Media*, the plaintiff also claimed that it had a vested right to install new signs based on

11   defendant city's alleged unlawful denial under a repealed ordinance.  The Ninth Circuit,

12   however, rejected the claim, explaining that "vested rights in a land development

13   permit, are created and their dimensions are defined by existing rules or understandings

14   that stem from . . . state law."  *Outdoor Media* at 903 (citation omitted).  California,

15   however, has recognized a protected property interest in billboard construction only

16   "[o]nce a permit has been issued." *Id.*[4]  Because the plaintiff lacked a permit for its

17   proposed billboard, the *Outdoor Media* court ruled that it could not state a claim to

18   vested rights. *Id.*  Under *Outdoor Media*, Plaintiffs have no vested rights that entitle

19   them to now install supergraphic signs in violation of the Amended Hollywood SUD.[5]

20

21

22

23 ————————————————

24 [4]California law also recognizes vested rights where a developer has obtained a development agreement or a vesting tentative map approval.  (See Section V. A. below.)

25 Plaintiffs, however, do not allege that they ever obtained a development agreement or vesting tentative map approval.

26

27 [5] See FAC ¶ 34 (At the time the City filed the civil enforcement action on May 4, 2010,

28 "Plaintiffs did not have any supergraphic signs posted, nor have Plaintiffs erected or maintained any supergraphic signs since that time.")

## II.   PLAINTIFFS' CHALLENGES TO THE ICOS ALSO FAIL UNDER GOVERNMENT CODE SECTION 65010

Even if Plaintiffs' claims were not moot, they would fail on the merits.  It is inappropriate and unnecessary to discuss the validity of the original Hollywood SUD at this stage because this Court already adjudged that ordinance to be lawful in *Paramount I*, and that judgment is currently on appeal to the Ninth Circuit.

As for the ICOs, Plaintiffs are correct that California Government Code Section 65858 provides that local government agencies are to adopt interim control ordinances for an initial 45 days, and may thereafter extend the ordinances for up to a maximum of two years.  Cal. Gov't Code § 65858 (a).  Here, the City admittedly erred in adopting the ICO for an initial period of 90 days.  (RJN, Exs. 4-5.)  This error was harmless, however, because the City never extended the moratorium for more than the maximum two years allowed.  In fact, the ICOs were only in place between December 26, 2008, and August 14, 2009 (when Ordinance No. 180841 took effect), a little more than six months.  (RJN, Ex 6.)

By adopting Government Code Section 65010, the state legislature provided local government agencies with a safe harbor in order to prevent wayward plaintiffs from attempting to use minor procedural errors to attack ordinances that serve the public benefit.  Section 65010(b) provides that "[n]o action . . . by any public agency or its legislative body . . . on any matter subject to this title shall be held invalid or set aside by any court . . . by reason of any error, irregularity, informality, neglect or omission (hereafter, error) as to any matter pertaining to . . . matters of procedure subject to this title, unless the court finds that the error was prejudicial and that the party complaining or appealing suffered substantial injury from that error and that a different result would have been probable if the error had not occurred."  Section 65010(b) also provides that "[t]here shall be no presumption that error is prejudicial or that injury was done if the error is shown."

9

Here, Plaintiffs fail to allege that the City's procedural error in adopting the ICO resulted in any injury to them, much less substantial injury. Plaintiffs also fail to allege that a different result would have been probable if the City's procedural error had not occurred. Nor could Plaintiffs allege such facts. The ICOs were designed to arrest the proliferation of unpermitted off-site and supergraphic signs in the wake of the trial court's decision in *World Wide Rush*. (RJN, Exs. 4-5.) Without the procedural error, the City Council would have simply adopted the ICOs for an initial period of 45 days, instead of 90 days, and would have extended the ICOs thereafter.[6] The impact on Plaintiffs would have been the same.

## III. PLAINTIFFS HAVE FAILED TO STATE A RIPE CLAIM FOR DAMAGES

Plaintiffs' damages claims should also be dismissed because Plaintiffs have failed to state a ripe claim for adjudication. Plaintiffs have failed to allege any specifics of their proposed signage or even a formal action on their alleged applications by the City. Specifics and a formal action are needed to determine whether the City ever applied its regulations to Plaintiffs at all, and if so how, whether Plaintiffs have standing to challenge those regulations, and whether that application was unconstitutional.

*National Advertising Co. v. City of Miami*, 402 F.3d 1335 (11th Cir. 2005), is instructive. There the court dismissed a billboard company's constitutional challenges to a city's billboard regulations and refusal to grant permits for six new billboards on the grounds that the plaintiff had never obtained an official rejection of its permit applications, and therefore its claims were not ripe. *National Adver. Co.* at 1340-41 ("A zoning clerk's verbal statement or written notation on National's application that its

_____

[6] *See, e.g.,* October 6, 2009, Order Denying Motion for Second Preliminary Injunction and to Amend First Preliminary Injunction, *Community Redevelopment Association, LLC, dba Liberty Media Group v. City of Los Angeles*, CV 08-07584, RJN, Ex. 12, pp. __ [19-20] (rejecting Liberty Media's procedural challenges to the ICO because they had failed to demonstrate substantial injury or that a different result would have been probably if the error had not occurred).

proposed billboards were 'to tall' or 'in the wrong zone' is not conclusive evidence of a denial and does not amount to evidence of a dispute of 'sufficient concreteness' for judicial review. [citation.]")  *See also Shelter Creek Dev. Corp. v. City of Oxnard*, 838 F.2d 375, 378-79 (9th Cir. 1998) (dismissing challenge to land use ordinance incorporating wide range of building and parking restrictions as not ripe where plaintiff had not submitted at leas one meaningful application resulting in a final and authoritative determination by the city); *Digital Props v. City of Plantation*, 121 F.3d 586, 590 (11th Cir. 1997) ("A challenge to the application of a city ordinance does not automatically mature at the zoning counter.  In order for the city to have 'applied' the ordinance to Digital, a city official with sufficient authority must have rendered a decision regarding Digital's proposal.")

Here, Plaintiffs do not allege any formal rejection of their applications by any city official with authority.  Plaintiffs merely provide vague and conclusory allegations that they "sought permits" at various times, but that the "City refused to even properly process or review Paramount's applications[.]" (FAC ¶¶ 23, 27, 33, 35, 36.)  The Court found that the plaintiff in *World Wide Rush III* had failed to present a ripe claim when it made nearly identical allegations that the City "refused to process or accept Plaintiff's permit applications or issue the permits requested."  November 9, 2009, Order Granting Defendant's Motion for More Definite Statement, or, in the Alternative to Dismiss, *World Wide Rush, LLC v. City of Los Angeles,* CV 09-3793 ABC, RJN, Ex. 11, pp. 226-229.)

On a 12(b)(1) motion, the burden is on the party asserting jurisdiction and the court will presume a lack of jurisdiction until the pleader proves otherwise.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir. 1989).  Here, Plaintiffs simply have not met their burden of demonstrating a ripe claim over which this Court has jurisdiction.

1    Nor could Plaintiffs meet their burden, particularly with respect to any claim

2    under the original Hollywood SUD.  Section 6.C. of the original Hollywood SUD

3    required a Project Permit Compliance approval from the Director of Planning pursuant

4    to the procedures set forth in Los Angeles Municipal Code Section 11.5.7 before the

5    City's Department of Building and Safety could issue a building permit for supergraphic

6    signs.  (RJN, Ex. 13.)  The Declaration of City Planning Blake Lamb demonstrates that

7    Paramount never filed an application for a Project Permit Compliance approval for

8    supergraphic signs.  (Lamb Decl., ¶ 6.)  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th

9    Cir. 1987) (In deciding a 12(b)(1) motion, a court is not limited to the allegations in the

10   complaint but may also consider extrinsic evidence); *World Wide Rush III* Order, RJN,

11   Ex. 11, p. 224:17-19 (same).

12   Moreover, the Lamb Declaration demonstrates that Plaintiffs were quite familiar

13   with the Project Permit Compliance procedure.  Indeed, Plaintiffs complied with the

14   Project Permit Compliance procedure to obtain building permits for Temporary Special

15   Displays (i.e., temporary supergraphic signs) at the Sunset Properties back in 2006.

16   (Lamb Decl., ¶ 7; FAC ¶ 22 (acknowledging that in 2006 Plaintiffs were "granted

17   permits to erect temporary special displays" that allowed them to maintain signs at the

18   Sunset Properties for up to 120 days of the year).  Plaintiffs' damages claims are not ripe

19   and should be dismissed.

20   **IV.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM CONCERNING**

21   **THE CITY-WIDE SIGN REGULATIONS LOCATED IN THE**

22   **MUNICIPAL CODE**

23   Plaintiffs purport to challenge all of the City's Sign Regulations, but only mention

24   a few provisions.  (FAC ¶¶ 56, 58, Prayer for Relief.)  The Ninth Circuit has already

25   rejected this tactic.  *See Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 892

26   (9th Cir. 2007) (a sign company "has standing to challenge only those provisions that

27   applied to it" and "cannot leverage its injuries under certain, specific provisions to state

28   an injury under the sign ordinance generally.").  As for the specific provisions Plaintiffs

12

do mention, their claims either fail on the merits, or are so vague and ambiguous that they require a more definite statement of pleading.

To begin with, Plaintiffs bring a facial unfettered discretion challenge to the bans on off-site and supergraphic signs located in LAMC Section 14.4.4 B (9) and (11) simply because they contain exceptions for signs authorized by supplemental use districts and development agreements.  (FAC ¶ 45.)  Plaintiffs' challenge, however, is barred by *World Wide Rush v. City of Los Angeles*, 606 F.3d 676 (9th Cir. 2010) (rejecting claim that the City's bans create unfettered permitting discretion by recognizing an exception for signs authorized pursuant to a specific plan, supplemental use district, or development agreement).

Plaintiffs next allege that "mural signs are subject to the approval of a body the City has created called the "Cultural Affairs Commission," which "permits signage based on arbitrary and/or unfair grounds such as their content."  (FAC ¶ 46.)  Since Plaintiffs do not allege their desire to install a mural sign on the Sunset Properties, they lack standing to challenge the mural sign ban. *See Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 892 (9th Cir. 2007) ("Get Outdoors II has standing to challenge only those provisions [of the City's sign code] that applied to it.")  Additionally, Plaintiffs misread City law.  Mural signs are banned in the City, unless authorized pursuant to a specific plan, supplemental use district, or development agreement. *See* LAMC Section 14.4.4 B (10), RJN, Ex. 14.)  Plaintiffs have failed to identify any such document authorizing mural signs at the Sunset Properties, nor is there such a document.  Thus, under both 12(b)(1) and 12(b)(6), Plaintiffs' claim must be dismissed.

Plaintiffs also challenge the City's use of "definitional categories" of signs such as "wall sign," "supergraphic sign," and "mural sign."  (FAC, ¶ 47.)  Plaintiffs vaguely assert that these definitions are "outdated and arbitrary" and "fail to achieve any legitimate governmental goal."  (Id.)  Again, Plaintiffs lack standing to challenge any provisions that do not apply to them. *Get Outdoors* at 892.  Plaintiffs' claims should

13

1  also be dismissed because they are so vague and ambiguous, that the City simply cannot

2  formulate a response to them.  Fed. R. Civ. Proc. 12(e)

3        Plaintiffs next challenge the City's ability to distinguish between on-site and off-

4  site commercial sings.  (FAC ¶ 48.)  The Court recently dealt with this claim in denying

5  Vanguard Outdoor, LLC's Motion for a Preliminary Injunction.[7]  In doing so, the Court

6  cited to *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir.

7  2003), a case that upheld the very specific definitions of on-site and off-site that the City

8  uses to this day.  (See LAMC § 14.4.2, RJN, Ex. 14.)  To the extent Plaintiffs are

9  attempting to raise an as applied challenge to the City's use of these definitions, they

10  have failed to allege any facts to which the City can respond.  A more definite statement

11  would be necessary in order to proceed with the claim.

12        Finally, Plaintiffs allege that the City has discriminated in its enforcement under

13  "all of the Sign Regulations[.]"  (FAC, ¶ 49.)  To support this claim, Plaintiffs merely

14  list locations where supergraphics or "similar large signage" has been installed.  (Id.)  It

15  is unclear precisely what sort of claim Plaintiffs are trying to make out based on these

16  allegations, but to the extent Plaintiffs are trying to state a *Central Hudson*

17  underinclusivity challenge, they have failed to do so.

18        In this Court's recent Order denying Vanguard's Motion for Preliminary

19  Injunction (which Plaintiffs in this case were ordered to read), it reviewed at length the

20  Ninth Circuit's recent application of the *Central Hudson* test in *World Wide Rush* and

21  *Metro Lights v. City of Los Angeles,* 551 F.3d 898 (9th Cir. 2009).  While the City will

22  not recite the entirety of the Court's careful and detailed review of those cases, the

23  Court's final summary of the law is worth quoting in full:

24              First, the City's sign ban can withstand a <u>Central Hudson</u>

25              attack so long as it is not 'so pierced by exceptions and

26

27  [7] *See* September 27, 2010 Amended Order Re: Plaintiffs' Motion to Amend Complaint;

28  Motion for a Preliminary Injunction, RJN, Ex. 15, pp. 322-23 ("The distinction between offsite and onsite signs has been repeatedly upheld as content-neutral and valid.").

14

inconsistencies,' as to directly undermine the City's interests in traffic safety and aesthetics. <u>World Wide Rush</u>, 606 F.3d at 686. And those exceptions cannot be viewed in isolation or parsed too finely; the exceptions must be looked at holistically in the context of the entire regulatory scheme. <u>Id.</u> at 685-86. Second, a <u>Central Hudson</u> challenge is not focused on the particular plaintiff; instead, the Court must look at 'whether the City's ban advances its interests in its general application, not specifically with respect to' a particular speaker. <u>Metro Lights</u>, 551 F.3d at 904. Third, the court must defer to the reasonable legislative judgments of the City on how best to advance its own interests in aesthetics and traffic safety. <u>Id.</u> at 910. To combat the proliferation of supergraphics that have blanketed the City, the City may take a graduated response, even going so far as granting exceptions for thousands of signs over which it can exercise control. <u>Id.</u> at 910. That response unquestionably includes exercising its classically legislative function of creating exceptions to the sign bans for SUDs and development agreements, so long as those judgments are reasonable in light of the City's interests. <u>World Wide Rush</u>, 606 F.3d at 687-88.

(RJN, Ex. 15, pp. 317-18.)

Under this standard, Plaintiffs do not state a *Central Hudson* claim simply by alleging that the City has authorized supergraphics "or similar large signage" at 10 locations in the City. Plaintiffs' claim should be dismissed under Rule 12(b)(6), or at a minimum, a more definite statement of pleading should be required.

V.    **PLAINTIFFS' CHALLENGES TO THE AMENDED HOLLYWOOD SUD FAIL AS A MATTER OF LAW**

A.    **The Amended Hollywood SUD Does Not Grant Unfettered Discretion To Approve Supergraphic Signs**

Plaintiffs allege that the "City and State (by state law) allow and promote a large number of so-called 'vested' supergraphic and digital signs.  The standard for vesting is vague and often subject to change at the discretion of the City and City officials." (FAC ¶ 49(b) 3.)  Although Plaintiffs' allegations are difficult to decipher, the City assumes that Plaintiffs are attacking the provision in the Amended Hollywood SUD that exempts from the ban on supergraphic signs those projects that have vested rights under California law.

Section 6. K. of the Amended Hollywood SUD provides:

> The prohibition of Supergraphic Signs in this Ordinance shall not apply to any development that is vested under California law. A development is vested under California law if:
>
> a. Prior to the effective date of this ordinance, a building permit for Supergraphic Signs or Supergraphic Sign structures has issued and substantial work has been performed and substantial liabilities have been incurred in good faith reliance on the building permit;
>
> b. A vesting tentative map is ultimately approved, but only if: (1) the application materials and/or the environmental review documents for the tentative map reflect that the development includes the installation of Supergraphic Signs; and (2) the application for the vesting tentative map was deemed complete during the time in which City law authorized the installation of Supergraphic Signs pursuant to the regulations set forth in the prior Hollywood Signage SUD, Ordinance No. 176172; or

16

c. A development agreement is executed for a development including Supergraphic Signs during the time in which City law authorized the installation of Supergraphic Signs pursuant to the regulations set forth in the prior Hollywood Signage SUD, Ordinance No. 176172.

(RJN, Ex. 9.)

As confirmed by the legislative findings (RJN, Ex. 10, F-4, F-5), this section was intended to do nothing more, and in fact does nothing more, than recite California law. *See, e.g., Avco Community Developers, Inc. v. South Coast Regional Com.*, 17 Cal. 3D 785 (1976) (a developer has a vested right to proceed with development once it has performed substantial work and incurred substantial liabilities in good faith reliance on a validly issued building permit); Cal. Gov't Code §65866 (the "rules, regulations and official policies governing permitted uses of the land, governing density, and governing design, improvement and construction standards and specifications, applicable to development of the property subject to a development agreement, shall be those rules, regulations and official policies in force at the time of execution of the agreement."); *City of West Hollywood v. Beverly Towers, Inc.*, 52 Cal. 3D 1184, 1193 n. 6 (1991) (a "vesting tentative map gives a developer a vested right to proceed with development, including a right to obtain all necessary building permits and discretionary approvals, in accordance with the local ordinances, policies and standards in effect when the application for the vesting tentative map was complete."); Cal. Gov't Code §66598.1 (same).

Plaintiffs' unfettered discretion challenge should be dismissed for two reasons. First, California's vested rights laws are not subject to facial attack under the unfettered discretion doctrine because they are laws of general applicability not closely associated with speech. *See S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1135 (9th Cir. 2004) ("to be subject to a facial challenge, a licensing law 'must have a close enough

17

nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat' of the risks of censorship.") (citations and quotations omitted).

Second, California vested rights law does not confer unfettered permitting discretion on the City of Los Angeles. Either a developer has a preexisting building permit for supergraphic signs or supergraphic sign structures, or it does not. Either a developer has a development agreement authorizing construction of a supergraphic signs pursuant to the original Hollywood SUD or it does not. Either a developer completed an application for a vesting tentative map while the original Hollywood SUD was in force, or it did not. Section 6.K. of the Amended Hollywood SUD does not vest unfettered permitting discretion in any City official. Indeed, the Ninth Circuit has upheld regulations that provide officials with much greater discretion than what is set forth in Section 6.K. of the Amended Hollywood SUD. *See*, *e.g., Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 904-05 (9th Cir. 2007) (rejecting facial unfettered discretion challenge to regulation that conditioned a sign permit on the Planning Department's finding that the sign is " compatible with the style or character of existing improvements upon lots adjacent to the site" because even though "the design review criteria are 'somewhat elastic and require reasonable discretion to be exercised by the permitting authority, this alone does not make the Sign Code an unconstitutional prior restraint.'")

### B.    The Amended Hollywood SUD Satisfies The *Central Hudson* Test

Plaintiffs also claim that the Amended Hollywood SUD violates *Central Hudson* because (1) it grandfathers projects that were approved on or before November 12, 2008 (FAC ¶ 51); and (2) because it continues to allow "a larger number of other types of signs" such as "signs on street lamps," "billboards," "window signs," "parking lot signs," and "portable sidewalk signs" (FAC ¶ 52). Plaintiffs' *Central Hudson* claims, however, are simply not tenable in light of the Ninth Circuit's decisions in *Metro Lights* and *World Wide Rush*, and this Court's summary of those decisions in the *Vanguard* case.

18

1    Taking the grandfathering exception first, the City Council made the following
2    legislative finding:

3         The Council also recognizes that several applicants may not
4         have obtained permits for their signs prior to the effective date
5         of the amended Ordinance and/or their projects may not have
6         involved a development agreement or a vesting tentative map.
7         Nonetheless, these applicants spent a significant amount of time
8         and money obtaining either a Project Permit Approval from the
9         City or a Sign Covenant Agreement with the CRA prior to
10        November 12, 2008 (i.e., the date that the Planning Department
11        first held a widely noticed hearing concerning the amendment
12        of the Hollywood Signage SUD).  Thereafter, these applicants
13        continued to invest a great deal of time and money in good faith
14        reliance on these approvals or agreements.  The Council finds
15        that it would be inequitable to now apply the new ordinance to
16        prohibit their projects.  Thus, it is the intent of this Council in
17        adopting Section 6 K. of the amended Ordinance to grandfather
18        all developments that obtained a Project Permit Approval or a
19        Sign Covenant Agreement prior to November 12, 2008.

20   (RJN, Ex. 10, F-4, F-5.)

21        This grandfathering exception is nothing more than a "reasonable legislative
22   judgment[] of the City on how best to advance its own interests in aesthetics and traffic
23   safety."  (Vanguard Order, RJN, Ex. 15, p. 317.)  The City could have canceled all
24   previously approved projects that did not have vested rights under California law, but
25   instead chose a more "graduated response" that balanced the City's interests against the
26   interests of those who had already spent a great deal of time and money obtaining
27   approvals before the City gave any notice of its intent to amend the Hollywood SUD.
28   (Id.)  This legislative determination is reasonable and does not violate *Central Hudson*.

*See, e.g., City of New Orleans v. Dukes*, 427 U.S. 297, 305 (1976) (rejecting equal protection challenge to local legislation that grandfathered long-standing push cart vendors in historic quarter based on their "substantial reliance interest" in operation).

Plaintiffs' allegations that the Amended Hollywood SUD continues to allow a variety of other sign types also fail to give rise to a *Central Hudson* claim.  Indeed, Plaintiffs appear to be arguing nothing more than that the City must either prohibit all commercial signs in the City, regardless of sign type, or it must allow them all, including supergraphics at the Sunset Properties.  The Ninth Circuit, however, specifically rejected such an "all-or-nothing approach" to billboard regulation.  *See World Wide Rush v. City of Los Angeles*, 606 F.3d 676, 685 (9th Cir. 2010).

## C.    Plaintiffs' As Applied Challenge To The Amended Hollywood SUD Fails To State A Claim

Plaintiffs vaguely conclude in the FAC that "The Amended Hollywood SUD is [] unconstitutional as applied."  (FAC 59(a).)  The City is terribly confused by this claim because Plaintiffs have set forth no factual allegations demonstrating that the City has applied the Amended Hollywood SUD in a way that results in viewpoint discrimination. *See Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) ("An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others.  An as-applied challenge does not implicate the enforcement of the law against third parties. Rather, a litigant may separately argue that discriminatory enforcement of a speech restriction amounts to viewpoint discrimination in violation of the First Amendment.") (internal citations omitted).

Here, Plaintiffs provide no factual allegations even hinting that the City has discriminatorily applied the Amended Hollywood SUD in a way that amounts to viewpoint discrimination.  Indeed, it would be extremely challenging for Plaintiffs to make such allegations given that the Amended Hollywood SUD only takes effect on the

20

day the City files this Motion to Dismiss.  (RJN, Ex. 11.)  Plaintiffs' claim should be dismissed under Rule 12(b)(6).

## VI.   PLAINTIFFS' TAKINGS CLAIMS SHOULD BE DISMISSED

Plaintiffs allege that the City has taken their property without compensation by allegedly failing to authorize the installation of supergraphic signs at the Sunset Properties, and by allegedly demanding fees and conditions that are not "roughly proportional" to any impact caused by the proposed signs.  (FAC ¶¶ 80-83.)  Plaintiffs' claims fail because they are not ripe and because they fail to allege facts sufficient to support a taking claim.

### A.   Plaintiffs' Takings Claims Are Not Ripe

Since the Constitution does not prohibit takings, but only takings without just compensation, "if a State provides an adequate procedure for seeking just compensation," then the plaintiff may not bring takings claims to federal court until they have "used the procedure and been denied just compensation."  *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 (1985).  The Ninth Circuit has recognized that ever since the Supreme Court's decision in *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304 (1987), California has provided an adequate procedure for seeking just compensation for alleged takings resulting from land use regulation.  *See Southern Pacific Transp. Co. v. Los Angeles,* 922 F.2d 498, 504-05 (9th Cir. 1990).  Because Plaintiffs do not allege that they have sought and been denied just compensation in state court through California's inverse condemnation procedures, their federal takings claims in this Court are not ripe and must be dismissed.  *Id.* at 208 ("when claims are unripe the correct disposition is dismissal . . . .")

21

### B.    Plaintiffs' Takings Claims Also Fail On The Merits

Plaintiffs also fail to allege sufficient facts to support a takings claim against the City.  While Plaintiffs offer a conclusion that the City demanded "fees and conditions" that were not "roughly proportional to the impact or burden of the proposed signage," (FAC, ¶82), Plaintiffs provide no factual allegations that the City ever attempted to charge them any fees or impose any conditions at all.  To the contrary, Plaintiffs' constantly allege that the City refused to even process their applications.  (*See, e.g.,* ¶¶ 16, 22, 23, 27, 29, 33, 35, 36.)

To the extent Plaintiffs mean to say that the CRA attempted to charge fees in exchange for their proposed signs, such allegations do not support a claim against the City.  The City and the CRA are not one and the same.  *See, e.g., A Local & Regional Monitor v. City of Los Angeles*, 12 Cal. App. 4th 1773, 1781 (1993) (recognizing the CRA as an "agency of the State of California").

## VII.  PLAINTIFFS' SELECTIVE PROSECUTION CLAIMS SHOULD BE DISMISSED

Plaintiffs also assert a selective prosecution claim against the City, alleging that the City has only enforced its regulations against "those who have chosen to maintain actions against the City in court that challenge the City's Sign Regulations."  (FAC ¶ 49(b).)

To succeed on a selective enforcement claim, Plaintiffs must demonstrate that "(1) other similarly situated individuals have not been prosecuted and (2) [their] prosecution was based on an impermissible motive."  *United States v. Sutcliffe*, 505 F.3d 944, 954 (9th Cir. 2007).  The standard for proving such a claim "is particularly demanding, requiring a criminal defendant to introduce 'clear evidence' displacing the presumption that a prosecutor has acted lawfully."  *Reno v. American-Arab Anti-Discrimination Comm*., 525 U.S. 471, 489 (1999).

Plaintiffs' claim should be dismissed for two reasons.  First, their claim simply defies logic.  According to Plaintiffs, the City could care less that rogue billboard

companies have been wallpapering the City with massive advertising signs without any permits.  Under Plaintiffs' theory, the City is happy to have these signs, so long as the rogue billboard operators merely refrain from filing any sort of lawsuit against the City in federal court.  Such a preposterous claim should be dismissed on its face.

Second, as the City demonstrates in Exhibit 16 to its Request for Judicial Notice, Plaintiffs' nonsensical claim is dead wrong.  Exhibit 16 contains copies of 6 separate *criminal* actions the City Attorney filed against parties who unlawfully erected signs who never sued the City.  Here, the City Attorney has only sued Plaintiffs *civilly*.  (RJN, Ex. 7.)

Even the civil enforcement action the City filed against Plaintiffs demonstrates that the claim has no merit.  Until the FAC was filed on October 26, 2010, only Paramount had sued the City.  The Court may take judicial notice that Plaintiff Sunset Blvd. Properties, LP had not sued the City, nor had Bradley Folb or Patricia High.  Despite this fact, the City named all of the Plaintiffs in its May 4, 2010 action.  Plaintiffs' selective enforcement claim should be dismissed.

## VIII.  PLAINTIFFS' REMAINING EQUAL PROTECTION CLAIMS SHOULD ALSO BE DISMISSED

In addition to their selective enforcement claim, Plaintiffs assert an equal protection challenge based on the "numerous exceptions that have been allowed to the ban and supergraphics and similar signs[.]"  (FAC, ¶ 70(b).)  This claim is indistinguishable from Plaintiffs' *Central Hudson* claim wherein they simply point out that there are a number of supergraphic signs in the City and then conclude *ipse dixit* that there must be a *Central Hudson* violation.  Indeed, when plaintiffs attempt to make out both a First Amendment and an Equal Protection claim based on the same facts, courts typically conclude that disposal of the First Amendment claim also disposes of the Equal Protection claim given the more stringent standard of review under the First Amendment.  *See, e.g., Rubin v. City of Santa Monica,* 308 F.3d 1008, 1019 (9th Cir. 2002); *Geary v. Renne*, 880 F.2d 1062, 1082 (9th Cir. 1989) ("Our analysis of plaintiffs-

appellees First Amendment challenge disposes -- somewhat anticlimatically -- of plaintiffs-appellees' equal protection contention.")  Plaintiffs' equal protection challenge is also devoid of material allegations showing that the City treated Plaintiffs differently than any similarly situated developer and fails for that reason as well.  *See, e.g.*, *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 583 (9th Cir. 1983) (upholding dismissal of claims that Arizona's securities statutes were "applied in an unevenhanded, arbitrary, capricious, and discriminatory manner" because the complaint did "not set forth any material facts in support of the allegations").

## IX.   IN THE ALTERNATIVE, MANY OF PLAINTIFFS CLAIM SHOULD BE STAYED UNDER THE *YOUNGER* ABSTENTION DOCTRINE

As alternative relief, the City asks that the Court stay all claims not related to either the Original Hollywood SUD, or the Amended Hollywood SUD under the *Younger* abstention doctrine.

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court held that principles of equity and comity bar federal courts from enjoining pending state court criminal prosecutions.  The Court has since extended *Younger* "beyond state criminal prosecutions, to civil enforcement proceedings, and even to civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."  *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367-68 (1989) (citations omitted).

The *Younger* abstention doctrine applies not only where the plaintiff specifically seeks to enjoin state proceedings, but also where the plaintiffs' action will have the practical effect of enjoining the state proceedings.  For example, in *Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004), the Ninth Circuit held in an *en banc* decision that *Younger* applies also to civil action for damages concerning matters addressed in the state court proceedings because "a determination that the federal plaintiff's constitutional rights have been violated would have the same practical effect as a

declaration or injunction on pending state proceedings.  However, federal courts should not dismiss actions where damages are at issue; rather, damages actions should be stayed until the state proceedings are completed." *Gilbertson* at 968.

Here, Plaintiffs' challenges to the sign regulations in the Municipal Code, the ICOs, and the City's enforcement action all pertain to matters that are directly at issue in the state court proceeding.  (RJN, Ex. 7, pp. 116-25)  All of these claims should, therefore, be stayed so as not to interfere with that proceeding.  The City's enforcement action does not mention or implicate the original Hollywood SUD, or the Amended Hollywood SUD; thus, to the extent Plaintiffs' claims concerning those regulations are not otherwise dismissed for the reasons set forth above, the City has no objection to proceeding with them at this time.

## X.   CONCLUSION

For all the foregoing reasons, the City respectfully requests that the Court dismiss the FAC in its entirety, and/or require Plaintiffs to provide a more definite statement of pleading and stay Plaintiffs' claims that impact the ongoing state court civil enforcement action.

Dated: November 17, 2010      **CARMEN A. TRUTANICH,** City Attorney
**KENNETH T. FONG**, Deputy City Attorney
**MICHAEL J. BOSTROM**, Deputy City Attorney


By:/S/Michael J. Bostrom
    Michael J. Bostrom
    Deputy City Attorney

Attorneys for Defendant
CITY OF LOS ANGELES

M:\Real Prop_Env_Land Use\Land Use\Michael Bostrom\Paramount II\Pleadings\City's Motion to Dismiss First Amended Complaint.doc

25