DOUGLAS E. MIRELL (SBN 094169)
dmirell@loeb.com
WILLIAM M. BRODY (SBN 229901)
wbrody@loeb.com
ERIC SCHWARTZ (SBN 266554)
eschwartz@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, California 90067-4120
Telephone: 310-282-2000
Facsimile: 310-282-2200

Attorneys for Plaintiffs
PARAMOUNT CONTRACTORS AND DEVELOPERS, INC., SUNSET BLVD. PROPERTIES, LP, BRADLEY FOLB and PATRICIA HIGH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARAMOUNT CONTRACTORS AND DEVELOPERS, INC., a California corporation, SUNSET BLVD. PROPERTIES, LP, a California Limited Partnership, BRADLEY FOLB, an individual, PATRICIA HIGH, an individual<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a California municipal corporation; the COMMUNITY REDEVELOPMENT AGENCY OF THE CITY OF LOS ANGELES; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. CV-08-05653-ABC-(PLAx)<br><br>Assigned to Hon. Audrey B. Collins<br><br>**PARAMOUNT CONTRACTORS AND DEVELOPERS, INC., BRADLEY FOLB, SUNSET BLVD. PROPERTIES, LP, AND PATRICIA HIGH'S OPPOSITION TO THE CITY OF LOS ANGELES' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT, OR IN THE ALTERNATIVE MOTION TO STAY CERTAIN CLAIMS** |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. LEGAL STANDARD ..... 2

B. PLAINTIFFS ALLEGE A VIABLE FIRST AMENDMENT CLAIM ..... 3

1. Plaintiffs Have Adequately Alleged That The City Granted Unbridled Discretion To The CRA And City Officials ..... 3

2. Central Hudson And Discriminatory Enforcement ..... 4

3. Plaintiffs Have Adequately Alleged First Amendment Claims Regarding Certain Of The City's Other Signage Regulations ..... 8

C. PLAINTIFFS' EQUAL PROTECTION CLAIMS ARE VALID ..... 10

1. The City Unequally And Arbitrarily Doles Out Supergraphics Rights To Favored Speakers. ..... 10

2. Plaintiffs Properly Allege Their Equal Protection Selective Enforcement Claims ..... 12

D. PLAINTIFFS' CLAIMS ARE NOT MOOT ..... 14

E. PLAINTIFFS' CLAIMS ARE FULLY RIPE ..... 17

F. PLAINTIFFS HAVE ADEQUATELY ALLEGED A TAKINGS CLAIM ..... 22

G. PLAINTIFFS STATED A VALID CHALLENGE TO THE ICO'S ..... 22

H. THE YOUNGER DOCTRINE SHOULD NOT BE APPLIED HERE ..... 23

I. THERE IS NO NEED FOR A MORE DEFINITE STATEMENT ..... 25

III. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*99 Cents Only Stores v. Lancaster Redevelopment Agency*, 237 F.Supp.2d 1123 (C.D. Cal. 2001) .......... 17-18

*Allison v. Brooktree Corp.*, 999 F. Supp. 1342 (S.D. Cal. 1998) .......... 3

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1990) .......... 2

*Bd. of Trustees of the State Univ. of New York v. Fox*, 492 U.S. 469 (1989) .......... 5, 7-8

*Boxall v. Sequoia Union High School Dist.*, 464 F.Supp.1104 (N.D. Cal. 1979) .......... 25

*C.B. v. Sonora Sch. Dist.*, 691 F.Supp.2d 1123 (E.D. Cal. 2009) .......... 25

*Central Hudson Gas & Electric Corp. v. Pub. Service Comm'n of N.Y.*, 447 U.S. 557 (1980) .......... Passim

*City of Cincinnati v. Discovery Network, Inc.* 507 U.S. 410 (1993) .......... 5-6

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) .......... 11

*City of Lakewood v. Plain Dealer Publishing Co.*, 46 U.S. 750 (1988) .......... 19

*City of Lakewood v. Plain Dealer Publishing Co.*, 886 U.S. 750 (1988) .......... 3

*Co. V. City of Miami*, 402 F.3d 1335 (11th Cir. 2005) .......... 20

*Concha v. London*, 62 F.3d 1493 (9th Cir. 1995) .......... 2

*Conley v. Gibson*, 355 U.S. 41 (1957) .......... 2

*Coral Constr. Co. v. King County,* 941 F.2d 910 (9th Cir. 1991) .......... 17

**Page(s)**

*Cottonwood Christian Center v. Cypress Redevelopment Agency*,
218 F.Supp.2d 1203 (C.D. Cal. 2002)....................24

*D'Lil v. Best Western Encina Lodge & Suites*,
538 F.3d 1031 (9th Cir. 2008)....................21

*Desert Outdoor Advertising, Inc. v. City of Moreno Valley*,
103 F.3d 814 (9th Cir. 2003)....................21

*Desert Outdoor Advertising, Inc. v. City of Oakland*,
405 F.3d 798 (9th Cir. 2007)....................5

*Dolan v. City of Tigard*,
512 U.S. 374 (1994)....................22

*Edenfield v. Fane*,
507 U.S. 761 (1993)....................6

*Eisenstadt v. Baird*,
405 U.S. 438....................10

*Foti v. City of Menlo Park*,
146 F.3d 629 (9th Cir. 1998)....................6

*Geary v. Renne*,
880 F.2d 1062 (9th Cir. 1989)....................10

*Graham v. Henderson,*
89 F.3d 75 (1996)....................12

*Greater New Orleans Broad. Ass'n, Inc. v. United States,*
527 U.S. 173 (1999)....................5

*Green v. City of Tucson*,
255 F.3d 1086 (9th Cir.2001)....................23

*Huffman v. Pursue, Ltd.*,
420 U.S. 592 (1975)....................24

*Jacobus v. Alaska*,
338 F.3d 1095 (9th Cir. 2003)....................16

*Kawaoka v. City of Arroyo Grande*,
17 F.3d 1227 (9th. Cir. 1994)....................18

*Lamar Advertising Co. v. Township of Elmira*,.
328 F.Supp.2d 725 (E.D. Mich. 2004)....................15

**Page(s)**

*Lujan v. National Wildlife Fed'n*,
497 U.S. 871 (1990) ........ 3

*M&A Gabaee v. Community Redevelopment Agency of City of Los Angles*,
419 F.3d 1026 (9th Cir. 2005) ........ 24

*Martino v. Santa Clara Valley Water Dist*.,
703 F.2d 1141 (9th Cir. 1983) ........ 21

*Metro Lights LLC v. City of Los Angels*,
551 F.3d 898 (9th Cir. 2009) ........ 5

*MHC Financing Ltd. Partnership Two v. City of Santee*,
2010 WL 4024780 (S.D. Cal. October 13, 2010) ........ 22, 24

*Middlesex County Ethics Committee v. Garden State Bar Ass'n*,
457 U.S. 423 (1982) ........ 23

*Moore v. City of Costa Mesa*,
886 F.2d 260 (9th Cir. 1989) ........ 2

*National Advertising Co. v. City of Orange*,
861 F.2d 246 (9th Cir. 1988) ........ 15, 20

*Native Village of Noatak v. Blatchford*,
38 F.3d 1505 (9th Cir. 1994) ........ 17

*Niemotko v. State of Md*.,
340 U.S. 268 (1951) ........ 11

*Nollan v. California Coastal Commission*,
483 U.S. 825 (1987) ........ 22

*Northwest Envtl. Advocates v. City of Portland,*
56 F.3d 979 (9th Cir.1995) ........ 15

*Outdoor Media Group Inc., v. City of Beaumont*,
506 F.3d 895 (9th Cir. 2007) ........ 16-17

*Police Dept. of City of Chicago v. Mosley*,
408 U.S. 92 (1972) ........ 11

*Regency Outdoor Advertising, Inc., v. City of Los Angeles California, et. al.*,
370 Fed. Appx. 862 (9th Cir. 2010) ("*Regency*") ........ 4

*Rivers v. Walt Disney Co.*,
980 F. Supp. 1358 (C.D. Cal. 1997) ........ 25

**Page(s)**

*Romer v. Evans*, 517 U.S. 620 (1996) .......... 11

*Rubin v. City of Santa Monica*, 308 F.3d 1008 (9th Cir. 2002) .......... 10

*San Remo Hotel, L.P. v. San Francisco*, 545 U.S. 323 (2005) .......... 22

*Southern Cooperative Development Fund v. Driggers*, 696 F.2d 1347 (11th Cir. 1983) .......... 15

*Tyler v. Cuomo*, 236 F.3d 1124 (9th Cir. 2000) .......... 15

*U.S. v. Steele*, 461 F.2d 1148 (9th Cir. 1972) .......... 12-13

*Valley Outdoor, Inc. v. City of Riverside*, 446 F.3d 948 (9th Cir. 2006) .......... 15

*Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000) .......... 11

*Warren v. City of Athens, Ohio* 411 F.3d 697 (6th Cir. 2005) .......... 11

*Wiener v. County of San Diego*, 23 F.3d 263 (9th Cir. 1994) .......... 24

*Wolfson v. Brammer*, 616 F.3d 1045 (9th Cir. 2010) .......... 18, 21

*World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676 (9th Cir. 2010) ("*World Wide Rush*") .......... Passim

**STATUTES**

42 U.S.C. § 1983 .......... 3

California Government Code § 65010 .......... 22

California Government Code § 65858 .......... 23

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8(a)(2) .......... 2

**Page(s)**

Federal Rule of Civil Procedure 12(b)(6) ....................................................................Passim

Federal Rule of Civil Procedure 12(e) ............................................................................ 25

# I. INTRODUCTION

Plaintiff Paramount Contractors and Developers, Inc. ("Paramount") is a small, family-owned real estate company that owns two office buildings on Sunset Boulevard in Hollywood. Unlike the well-heeled developers and signage companies that have received preferred treatment for their signage requests, for the last five years, Paramount has been treated in a grossly unfair manner by the City of Los Angeles (the "City") and its agents. Since 2005, Paramount has spent hundreds of thousands of dollars on consultants, experts and attorneys and has tried every possible avenue to obtain supergraphic permits through normal channels. Yet for reasons that have never been articulated, the City and Community Redevelopment Agency ("CRA") have rejected Paramount's attempts at every turn. At the same time, Paramount has been forced to watch as an endless string of functionally identical supergraphics materialize throughout Hollywood and elsewhere, including on buildings that are literally next door to its two properties on Sunset Boulevard.

The City's scheme in the Hollywood Signage Supplemental Use District ("Hollywood SUD")—no matter what the City Council intended—turned out to be nothing more than a way to afford favored corporations and developers special speech privileges. By vesting completely unbridled discretion in the CRA and Planning Department officials, the City allows its agents to selectively dole out supergraphics permits without any constraints. This type of scheme was recently criticized by State Assembly Member Chris Norby who, in supporting Governor Jerry Brown's proposal to eliminate all redevelopment agencies statewide, noted that such agencies have become "a playground for bureaucrats, planners and politically connected developers who prefer profits from the public trough rather than the free market." This is certainly true in Hollywood where decisions as to who obtains signage permits have little to do with aesthetics or traffic safety and everything to do with the identity of the applicant seeking the permit.

In the wake of the Ninth Circuit's *World Wide Rush* decision, the City now

apparently believes that it is free to regulate speech with impunity. The City believes its authority is so strong that it now argues that Plaintiffs, as a matter of law, cannot even overcome a motion to dismiss on fact-based Equal Protection or First Amendment causes of action. But the City's Motion to Dismiss ("Motion") largely ignores the allegations in Plaintiffs' First Amended Complaint and assumes that the evidence is settled. Paramount does not need to ***prove*** its claims at this stage of the litigation. Paramount's complaint identifies an unconstitutional pattern and practice by the City of enacting arbitrary restrictions on speech rights and favoring some parties over others for no valid reason. For the City to suggest that a plaintiff can never even properly ***allege*** that its First Amendment or Equal Protection rights have been violated is absurd and only serves to underscore the City's inflated sense of power over fundamental rights.

## II. ARGUMENT

### A. LEGAL STANDARD

Motions to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6), may only be granted if a complaint is devoid of any set of facts sufficient to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). A court must construe a complaint in the light most favorable to the plaintiff and it must accept as true all of the well-pled allegations in the complaint and all reasonable inferences to be drawn therefrom. *See Concha v. London*, 62 F.3d 1493, 1500 (9th Cir. 1995). Given this rule of liberal construction, a motion to dismiss must be denied unless the defendant can establish *beyond all doubt* that the absence of *any circumstances* under which the plaintiff can prove *any set of facts* in support of its claim. *Moore v. City of Costa Mesa*, 886 F.2d 260, 262 (9th Cir. 1989). A complaint need only supply "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant is placed on notice of "what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); Fed. R. Civ. P. 8(a)(2). A plaintiff need

not allege facts with particularity; rather, at the pleading stage, "general allegations [are presumed to] embrace those specific facts that are necessary to support the claim." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Finally, it is axiomatic that, on a Rule 12(b)(6) motion "the court cannot consider material outside the complaint, such as facts presented in briefs, affidavits or discovery materials." *Allison v. Brooktree Corp.,* 999 F. Supp. 1342, 1347 (S.D. Cal. 1998).

## B. PLAINTIFFS ALLEGE A VIABLE FIRST AMENDMENT CLAIM[1]

### 1. Plaintiffs Have Adequately Alleged That The City Granted Unbridled Discretion To The CRA And City Officials

The City does not challenge the substance of Plaintiffs' First Amendment unbridled discretion challenge to the Original Hollywood SUD. *See* Plaintiffs' First Amended Complaint ("FAC" or "Complaint") ¶¶ 22, 39, 40, 60; *see also* ¶¶ 75-79 (seeking damages and attorneys' fees for the same conduct under 42 U.S.C. § 1983). Under well-settled precedent, an ordinance that vests an official with unfettered discretion to grant or deny permits for expressive activity violates the First Amendment. *City of Lakewood v. Plain Dealer Publishing Co*., 886 U.S. 750, 755-62 (1988). In *World Wide Rush,* the Ninth Circuit affirmed that "regulations must contain narrow, objective, and definite standards to guide the licensing authority and must require the official to provide an explanation for his decision." *World Wide Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 687 (9th Cir. 2010) (*"World Wide Rush"*), *citing Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1025 (9th Cir. 2009). The Ninth Circuit also declared that "[u]nbrideld discretion challenges typically arise when discretion is delegated to an

---

[1] The City's Motion only attacks portions of Plaintiffs' Complaint and is therefore more akin to a motion to strike. Its Motion does not specify which allegations it wants struck and does not attack all grounds supporting Plaintiffs' causes of action. *See* FAC ¶¶ 59-62. At most, the City is only entitled to the relief it specifically requested. Plaintiffs do not bear the burden of *proving* each aspect of their First Amended Complaint in opposition to this Motion and do not attempt to do so here.

administrator, police officer, or other executive official, as opposed to a legislative body." *Id.* at 588 (citations omitted). The Court pointedly noted that "***[t]his distinction makes all the difference***." *Id*. (emphasis added).

In a strikingly similar case, the City's and CRA's unbridled discretion in Hollywood was recently curtailed. The Ninth Circuit upheld Judge George King's ruling that the CRA exercised unconstitutional discretion in its permitting decisions regarding billboards in Hollywood. *See Regency Outdoor Advertising, Inc., v. City of Los Angeles California, et. al.*, 370 Fed. Appx. 862 (9th Cir. 2010) (unpublished) ("*Regency*"). Citing *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 2003), the District Court in *Regency* found that a regulation allowing the CRA to deny billboards based on the "general welfare of the public" or "aesthetic quality of the community or the surrounding land uses" grants unconstitutional discretion to city officials who would not be operating under any "meaningful restrictions." *See* Plaintiffs' Consolidated Request for Judicial Notice ("RJN") Ex. A, 20-28 (order in *Regency Outdoor Advertising, Inc. v. City of Los Angeles*, *et al.,* District Court Case No. CV 99-10456–GHK (CTx)).

The City has not challenged this claim, but just as in *Regency*, the Original Hollywood SUD allowed the CRA, the Planning Department and other City officials to approve or deny permits with no objective guidelines and no requirement to document their permit denials. FAC ¶¶ 39-40, 60; RJN Ex. B, 61-63. In 2006, 2008 and 2010, some of the same administrative officials at issue in *Regency* unreasonably denied Paramount supergraphics permits, sought illegal and unreasonable "in lieu" fees, and even refused to engage with Paramount, when numerous other parties were granted such rights. FAC ¶¶ 40, 24, 27, 29, 33, 35, 36. This scheme was plainly illegal.

**2. Central Hudson And Discriminatory Enforcement**

**a. Legal Standard**

Discriminatory enforcement of speech restrictions gives rise to an as-applied

challenge under the First Amendment. *Desert Outdoor Advertising, Inc. v. City of Oakland*, 405 F.3d 798, 805 (9th Cir. 2007); *see also Greater New Orleans Broad. Ass'n, Inc. v. United States,* 527 U.S. 173, 190-94 (1999) ("Even under the degree of scrutiny that we have applied in commercial speech cases, decisions that select among speakers conveying virtually identical messages are in serious tension with the principles undergirding the First Amendment"). Additionally, under *Central Hudson*, the test for the validity of restrictions on commercial speech is: (1) whether the speech concerns lawful activity and is not misleading; (2) whether the restriction seeks to implement a substantial government interest; (3) whether the restriction directly advances that interest; and (4) whether the restriction reaches no further than necessary to accomplish the government's stated objective(s). *Central Hudson Gas & Electric Corp. v. Pub. Service Comm'n of N.Y.*, 447 U.S. 557, 566 (1980).

The basic question under the third and fourth prong of the *Central Hudson* analysis is "whether the City's restriction 'directly advances' the government interest and whether the City's restriction is narrowly tailored to its aim." *Metro Lights LLC v. City of Los Angels*, 551 F.3d 898, 904 (9th Cir. 2009). Thus, even where the regulation restricts commercial speech and is content neutral, the regulation deserves an intermediate level of scrutiny, and the City bears the burden of demonstrating that its regulations are a reasonable fit for a substantial government interest. *Bd. of Trustees of the State Univ. of New York v. Fox*, 492 U.S. 469 (1989).

A court must balance the interests involved in determining whether a challenged regulation burdens commercial speech "no more broad[ly] or no more expansive[ly] than 'necessary' to serve [the government's] substantial interests." *Fox*, 492 U.S. at 476 (citations omitted). The fourth *Central Hudson* criterion requires that the means/ends fit embodied by the regulation be "reasonable," and that the government "carefully calculate" the costs imposed by its regulation, in light of the "substantial" goals it is intended to further. *Fox*, 492 U.S. 480; *City of Cincinnati v. Discovery Network, Inc.* 507 U.S. 410, 428, (1993). A restriction on

commercial speech that "provides only ineffective or remote support for the government's purpose" is invalid. *Central Hudson*, 447 U.S. at 564.

The Ninth Circuit has recognized the viability of as-applied challenges under *Central Hudson* where the City "diminish[es] the credibility of its rationale for restricting speech in the first place [by] exempting some speech from the general restriction," or where "a regulation may have exceptions that undermine and counteract the interest the government claims it adopted the law to further." *World Wide Rush*, at 681 n.1, *citing Greater New Orleans,* 527 U.S. at 90-93; *City of Cincinnati v. Discovery Network, Inc.* 507 U.S. 410, 428 (1993); *Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998).

**b. Plaintiffs Have Alleged A Valid *Central Hudson* Challenge**

The City asserts that Plaintiffs cannot, as a matter of law, state a *Central Hudson* claim regarding either the Amended Hollywood SUD or the citywide regulations. First and foremost, a *Central Hudson* challenge turns on the evidence of the exceptions to the ban and an evaluation of the reasonableness of the regulations to determine whether they are narrowly tailored to achieve the purported goals. This necessarily requires discovery and fact-finding; it is not the type of claim that can be dismissed under Fed. R. Civ. P. 12(b)(6); *see, e.g., Edenfield v. Fane*, 507 U.S. 761, 770 (1993) (government bears burden of justifying speech restrictions under *Central Hudson*).

The City does not argue that Plaintiffs cannot maintain their challenge to the Original Hollywood SUD under *Central Hudson*. FAC ¶ 55, 60(c). Although Paramount's *Central Hudson* claim regarding the Original Hollywood SUD was, in part, addressed in Paramount I, new facts and additional exceptions to the ban, particularly in the Hollywood SUD, have occurred since Paramount I was decided which give rise to additional claims. FAC ¶ 49-52 (identifying dozens of examples of supergraphics allowed since 2009).

These allegations also support Plaintiffs' *Central Hudson* challenge regarding

the Amended Hollywood SUD. FAC ¶¶ 55, 59. The City has allowed numerous supergraphics throughout the Hollywood SUD, including on buildings within one block of Paramount's properties. Plaintiffs alleged that the exceptions to the ban "undermine the City's asserted goals in enacting the bans and are therefore unconstitutional under *Central Hudson* and its progeny." FAC ¶ 61(b), 55. Plaintiffs list, *as examples*, ten recently allowed supergraphics. FAC ¶ 49. They note that "this is not intended to be a complete list," and that "the precise nature and timing of the allowed signs…will be the subject of further discovery." FAC ¶ 49 n.1. Plaintiffs also list eight examples of the City's unfair and arbitrary conduct. FAC ¶ 49(b). Plaintiffs then allege "numerous other exceptions to the City's Sign Regulations including many other supergraphic signs that have been allowed in the Hollywood SUD and throughout the City." FAC ¶ 50. Plaintiffs also allege that in the Hollywood SUD "the City and CRA have already approved at least approximately fifty locations for supergraphic signs….and recently approved at least approximately a dozen more supergraphics that will likely be displayed in the near future." FAC ¶ 51. Paramount will prove that these exceptions break the link between the City's regulations and its goals – particularly in the Hollywood SUD where supergraphics and other large signs are allowed at a much greater rate.

Moreover, the Amended Hollywood SUD is neither sufficiently tailored nor a reasonable fit to alleviate the purported harm. The City has previously asserted that the *Original* Hollywood SUD's allowance of supergraphics with the "in lieu" fee program was a reasonable fit to address the alleged harm of supergraphics. If that program achieved the City's goals, it would then constitute less restrictive means that should be constitutionally mandated. *See Fox*, 492 U.S. at 476 (the restriction may be "no more broad or no more expansive than 'necessary' to serve [the government's] substantial interests"). Because the City can allow more speech and still achieve its goals without implementing a flat so-called "ban," the Amended Hollywood SUD fails to meet the *Central Hudson* test. *Id.*; *See* FAC ¶ 59(b).

The Amended Hollywood SUD also has a "grandfathering exception" that was enacted to allow parties who obtained "Project Permit Approval" or a "Sign Covenant Agreement" prior to November 12, 2008, to erect supergraphics. *See* City's Motion to Dismiss ("MTD") at 19. The City's stated basis for this further exception is that "these applicants spent a significant amount of time and money obtaining either a Project Permit Approval from the City or a Sign Covenant Agreement…." *Id.* The City claims this is a "reasonable legislative judgment[] of the City on how best to advance its own interests in aesthetics and traffic safety." *Id.* at 19:21-23. Plaintiffs suspect this provision was included at the insistence of certain well-connected developers or others—and that it has nothing whatsoever to do with the City's "judgment" regarding traffic safety or aesthetics. Making sure the City's "friends" get supergraphics without wasting their time or money in the permitting process has absolutely nothing to do with traffic safety or aesthetics. There is no rational basis to allow these parties to have their applications grandfathered in while at the same time, by virtue of the Amended Hollywood SUD, Paramount is barred from pursuing the permitting process. This is a violation of both *Central Hudson* and the Fourteenth Amendment's equal protection clause.

The City also argues that, under *World Wide Rush*, Plaintiffs have not stated a claim under *Central Hudson* concerning the *citywide* supergraphics ban. Again, however, the City is asking this Court to resolve evidentiary questions. Plaintiffs have put forth examples of scores of exceptions and unreasonable applications of the City's various supergraphics restrictions. FAC ¶¶ 49-55. Under Fed. R. Civ. P. 12(b)(6), a short plain statement of the case is all that is necessary. The City is undoubtedly on notice of Plaintiffs' citywide *Central Hudson* claims.

**3. Plaintiffs Have Adequately Alleged First Amendment Claims Regarding Certain Of The City's Other Signage Regulations**

The City makes several arguments about some of Plaintiffs' other challenges to the citywide signage regulations. The City first alleges that, under *World Wide*

*Rush*, Plaintiffs cannot bring a facial unfettered discretion challenge to Municipal Code Section 14.4. However, *World Wide Rush* did not specifically address whether there was impermissible discretion involved in administering "development agreements." Rather, the Court simply assumed that development agreements would be approved by the City Council. However, that is not clear from the face of the code. Nor does the code cabin the authority of officials who can *deny* requests for development agreements, before they even get to the City Council. *World Wide Rush* also did not address the role of the City's Cultural Affairs Commission. Even if murals are not allowed in the Hollywood SUD, the fact that the Cultural Affairs Commission has the power to, and has, unevenly and arbitrarily doled out permits for such murals, supports Plaintiffs claims under *Central Hudson*.

The City next argues that Plaintiffs' challenge to the "definitional categories" regarding signage fail. FAC ¶ 61. However, as noted above, restrictions on speech, even time place and manner restrictions, must be reasonable. The City has numerous definitions and size limitations on signage, including, height and size locations for outdoor wall signs. Plaintiffs do not see any rational basis for these definitions. What is unsafe about a supergraphic that is not unsafe about a wall sign? Plaintiffs do not contend that the City is not allowed to set height restrictions, but the existing definitions appear to be arbitrary. Under *Central Hudson* Plaintiffs have adequately alleged and are entitled to pursue this claim.

Citing the *Vanguard Outdoor* case, the City next argues that its on-site/off-site distinctions have been validated by prior court decisions. *See* MTD 14. Plaintiffs' principal claim concerning the on-site/off-site distinction is an as-applied challenge. The City has allowed numerous so-called "on-site" signs that advertise for off-site companies. FAC ¶ 48, 61(e). The vague regulations allow City officials to decide what level of "on-site" sales make a sign "on-site." For instance, if Paramount were to install a Coca-Cola vending machine, could it then legally erect a

Coca-Cola supergraphic?[2] The complaint adequately alleges this flaw in the regulation and the unfair application of it to favored parties by City officials who have unbridled discretion to make the determination.[3] FAC ¶¶ 48, 61(e).

**C. PLAINTIFFS' EQUAL PROTECTION CLAIMS ARE VALID**

**1. The City Unequally And Arbitrarily Doles Out Supergraphics Rights To Favored Speakers**

The City has not challenged Plaintiffs' Equal Protection claim except to say that it is the same as a *Central Hudson* claim. MTD 23-24. The City makes no substantive argument except to cite *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1019 (9th Cir. 2002) and *Geary v. Renne*, 880 F.2d 1062, 1082 (9th Cir. 1989) for the proposition that Equal Protection and *Central Hudson* claims overlap. *Rubin,* an elections case, found a certain regulation met the rational basis test under both a free speech and Equal Protection analysis. *Id.* at 1019. The court in *Geary* found that restrictions on endorsements by political parties were constitutional for the same reasons under both the First and Fourteenth Amendments. Neither involved *Central Hudson.* Here, Plaintiffs' Equal Protection claims differ from their *Central Hudson* claims. Nonetheless both rely on *evidence* of discriminatory treatment and irrational arbitrary permitting decisions. Neither of these claims are subject to dismissal under Fed. R. Civ. P. 12(b)(6) so long as they are properly alleged.

The Equal Protection clause requires that "a classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation." *Eisenstadt v. Baird*, 405 U.S.

---

[2] This question is far from hypothetical as similar arrangements appear to undergird the rationale by which other building owners have been allowed to maintain multi-story graphics and other signage.

[3] As argued in the cited *Vanguard* matter, there is a legitimate dispute as to whether the on-site/off-site distinction is content-based. The cases the City cites do not hold that this issue has been conclusively resolved; therefore, Paramount has properly alleged a challenge to the regulations on this ground.

438, 447(1972); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Equal Protection clause also requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives. *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 102 (1972), *citing Williams v. Rhodes*, 393 U.S. 23 (1968). Granting government officials unfettered discretion over speech, and allowing them to implement authority unevenly runs afoul of the Equal Protection clause. *Niemotko v. State of Md.*, 340 U.S. 268, 271-73 (1951). At a minimum, the City's unequal treatment of Paramount in comparison to other similarly situated parties must be rational and based upon a legitimate government interest. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Warren v. City of Athens, Ohio* 411 F.3d 697, 711 (6th Cir. 2005); *Romer v. Evans*, 517 U.S. 620, 634-35 (1996).

Plaintiffs have alleged that the City allowed such similarly situated parties to erect supergraphics throughout Los Angeles, with no rational justification that would not also apply to Paramount. *See* FAC ¶¶ 49-52, 55, 70(b). The City and CRA have allowed numerous exceptions to their regulations and have overlooked countless code violations for preferred speakers. *Id.* Multiple other instances of unfair treatment have occurred and are ongoing. *Id.* Plaintiffs allege that this preferential treatment "amounts to disparate treatment between Plaintiffs and other similarly situated parties." FAC ¶ 70(b). Plaintiffs point to the "in lieu" fees sought from Paramount as higher than that for other parties and allege that the "reasons the City and CRA assert for allowing some favored parties to erect supergraphics would have equally applied to Paramount, yet Paramount was still denied the right to erect supergraphics. The allowances for some supergraphics and disparate treatment of these similarly situated parties, are not even rationally related[4] to any substantial government interest and do not achieve any of the City's asserted goals." *Id.* Without doubt, these allegations are sufficient to withstand a motion to dismiss.

---

[4] Because fundamental rights are implicated, an even higher standard of review must apply, but the City's conduct fails to even satisfy the rational basis test.

### 2. Plaintiffs Properly Allege Their Equal Protection Selective Enforcement Claims

By initiating the State Court Action, the City Attorney is doing nothing more than engaging in an admitted "porcupine defense"[5] of making litigants feel pain for suing the City. "Equal protection of the law is denied when state officials enforce a valid statute in a discriminatory fashion." *U.S. v. Steele*, 461 F.2d 1148 (9th Cir. 1972). This includes prosecution of those who choose to exercise their First Amendment rights, such as by pursuing claims in court. *Id; see also Graham v. Henderson,* 89 F.3d 75, 80 (1996) ("The right to petition government for redress of grievances—in both judicial and administrative forums—is among the most precious of the liberties safeguarded by the Bill of Rights").

In *Steele,* the U.S. Attorney's Office filed criminal charges against plaintiffs after they publicly protested the government's census program. They were then charged with, and convicted of, refusing to answer census questions. The Court overturned the convictions, finding a violation of their Equal Protection rights because plaintiffs appeared to have been investigated and charged as a result of their vociferous opposition to the law. The court noted that "an enforcement procedure that focuses upon the vocal offender is inherently suspect, since it is vulnerable to the charge that those chosen for prosecution are being punished for their expression of ideas, a constitutionally protected right." *Steele*, 461 F.2d at 1152.

Plaintiffs are in the same position. Plaintiffs allege that, the City" knowingly failed to undertake enforcement actions against many other individuals and companies who . . . engaged in similar alleged illegal acts," and that the City "initiated and prosecuted the State Court Action on account of Plaintiffs' choice to maintain their legal challenges in court to, and to speak out against, the City's Sign Regulations." FAC ¶ 70(a). The City's actions "are designed to chill and deter

---

[5] Maeve Reston, Trutanich Stirs City Attorneys' Office, L.A. Times, Aug. 9, 2009.

Plaintiffs' legal challenges, and are arbitrary, discriminatory, without a legally permissible basis…" *Id.* Of the hundreds of illegal supergraphics and likely thousands of minor building code violations, Plaintiffs are among a veritable handful of those who have been singled out in a civil enforcement proceeding.

The City submits five criminal complaints of others who have allegedly erected supergraphics. Such evidence does not negate, as a matter of law, Plaintiffs' allegation that Plaintiffs are being prosecuted on account of their challenge of the City's regulations. Simply because the City prosecutes one party, does not mean that it can prosecute another party on an unconstitutional basis. The City's evidence of these few other cases is also inappropriate in the context of a motion to dismiss where Plaintiffs' allegations are to be taken as true. Plaintiffs cannot be expected to have gathered all possible evidence at this stage and are entitled to seek discovery to determine the extent of the City's prosecution of similarly situated parties.

The City's evidence also does not show that these other parties failed to challenge the City's regulations, or that they are in fact similarly situated to Plaintiffs. *See* City's RJN Ex. 16. There is no indication whether these other cases involved public safety hazards not at issue in this case, why the parties were charged, whether they refused to erect legal signs, whether they had publicly challenged the City's regulations or whether they even sued the City. *Id.* Nor were any of the other parties sued for millions of dollars of fees for unfair competition and other civil penalties. Finally, it does appear that any of these parties were sued for the same minor building code violations charged against Plaintiffs.

Indeed, most of these cases appear to involve parties who refused to remove likely unsafe signs. By contrast, the City has sued Plaintiffs even though they have agreed not to erect any signs absent a court ruling or change in existing law, and even though they did not have any signs at the time they were sued. Is the City filing complaints against CBS Outdoor or other large corporate friends who have erected illegal signage or failed to obtain minor building permits in the past? The

City even sued Patricia High, a school teacher in Ohio who knows nothing about supergraphics and only inherited a portion of the land for one of the properties for which a long-term ground lease was provided to the other Plaintiffs. Has the City Attorney pursued any other such remote land owners—without warning—for millions of dollars in civil penalties where the building owner failed ***to place small identification labels on their signs***? The apparent answer is no.

Examined carefully, the City's evidence actually helps prove Plaintiffs' point. Since its so-called signage "ban" was enacted in 2002, the City can only identify four other parties who have been sued over supergraphics who did not sue the City first.[6] *See* City's RJN, Ex. 16. One of the complaints the City submits includes over 50 counts, and likely much more egregious conduct. *Id*. at p. 342. Another case involves Westside Properties, LLC, an entity that has been involved in lawsuits with the City of West Hollywood and is apparently related to Regent Outdoor, another company that has sued the City over signage issues. RJN Ex C. The other case is a lawsuit against Big Image LLC, Star Olympic Real Estate, Inc., and related parties. In fact, Big Image and Star Olympic *sued the City first*, before being retaliated against. On May 3, 2010, Big Image and Star Olympic filed a lawsuit against the City that challenged the City's supergraphics regulations. RJN Ex. D. The next month, the City filed criminal charges against them. In July 2010, City Attorney Carmen Trutanich issued a "**PRESS RELEASE**" announcing that in June 2010, Big Image and Star Olympic "were charged in a criminal case with illegally maintaining a supergraphic…" and other related charges. RJN Ex. E. *A million dollar bond was sought*. *Id.* The timing is obvious and proves Plaintiffs' point.

**D. PLAINTIFFS' CLAIMS ARE NOT MOOT**

Although the City asserts that Plaintiffs' claims for declaratory and injunctive relief regarding the Original Hollywood SUD and the ICOs are moot, it does not

---

[6] In several other cases, parties who have sued the City were subsequently sued in retaliatory enforcement actions. Discovery is needed to explore this activity.

assert that their claims for damages are moot. *See Outdoor Media*, 506 F.3d at 902 (change in law does not moot damages claim). Also, if this Court finds in Paramount's favor, it is entitled to recover its attorneys' fees for its prior challenges to the ordinances. *See Northwest Envtl. Advocates v. City of Portland,* 56 F.3d 979, 990 (9th Cir.1995). At a minimum, therefore, this Court will need to rule on Plaintiffs' substantive claims to determine the availability of monetary damages.

Likewise, Plaintiffs' First Amended Complaint seeks numerous forms of equitable relief that are not impacted by the repeal of the regulations, including, among others: (1) an order stating that Paramount has a right to erect signs; (2) an injunction against enforcing the challenged regulations or preventing Plaintiffs from erecting signage; (3) awarding a supergraphics permit; and (4) a declaration that Paramount has vested rights. FAC 28-30. None of these requests are moot, or even discussed by the City in its Motion. This Court has broad powers to remedy the City's unconstitutional refusal to issue Paramount permits by reversing the City's decision to deny such permits or by ordering it to issue a permit. *See, e.g., Valley Outdoor, Inc. v. City of Riverside*, 446 F.3d 948, 954 (9th Cir. 2006) (unconstitutional denial of permit could be redressed by reversing the City's arbitrary and unauthorized actions); *Southern Cooperative Development Fund v. Driggers*, 696 F.2d 1347 (11th Cir. 1983) (upholding an injunction ordering officials to approve an illegally denied subdivision plat); *National Advertising Co. v. City of Orange*, 861 F.2d 246, 247-250 (9th Cir. 1988) (upholding injunction ordering city to process applications); *Lamar Advertising Co. v. Township of Elmira*,. 328 F.Supp.2d 725, 734 (E.D. Mich. 2004) (court ordered a city to issue an unconstitutionally denied permit despite a subsequent regulation that would have barred the billboard). At a minimum, Plaintiffs have sufficiently pled that they are entitled to other forms of relief, and are entitled to prove their case. *Tyler v. Cuomo*, 236 F.3d 1124, 1137 (9th Cir. 2000) (a case is not moot where the district court has options to make an order that could alleviate the harms alleged).

The City's reliance on *Outdoor Media Group Inc., v. City of Beaumont*, 506 F.3d 895 (9th Cir. 2007) is misplaced. First, in *Outdoor Media*, the Court relied on the fact that "there is no longer any risk that Outdoor Media will be subject to the challenged ordinance." Here, in the State Court Action, Plaintiffs have each been sued based on the "repealed" ordinances and thus are entitled to challenge them. *See* City's RJN Ex. 7. A decision here also might resolve or inform that case if the City's actions and regulations are deemed illegal or unconstitutional.

In addition, *Outdoor Media* expressly found that the plaintiffs' First and Fourteenth Amendment claims were not mooted by a subsequent change in the law. The Court did find that a due process claim regarding property rights was moot because the plaintiff did not have vested rights. However, it found that the district court erred in dismissing Outdoor Media's First Amendment and Equal Protection claims on the grounds that Outdoor Media did not have vested rights, because "the establishment of a vested right is irrelevant to such a challenge." *Id*. at 903.

Paramount also has alleged a valid claim regarding vested rights and is entitled to pursue that claim. Paramount has been granted supergraphics permits in the past, and has expended significant funds both on its building and in the permitting process attempting to obtain permission to post additional supergraphics—the requirements for vested rights. It has done everything it should do to obtain the permits but for the City's illegal refusal to properly process and approve them. Paramount also has vested rights under the language of the Amended Hollywood SUD. Nothing in the complaint forecloses this claim as a matter of law.

The City, as the party asserting mootness, carries the "heavy burden" of persuading this Court that it is "absolutely clear" that the challenged conduct cannot reasonably be expected to resume. A showing that the offending portions of a statute were repealed is insufficient to meet this burden. *See Jacobus v. Alaska*, 338 F.3d 1095, 1102-04 (9th Cir. 2003) (repeal of statute did not moot claims where plaintiffs faced potential criminal and civil penalties for past violations of

challenged statute); *Coral Constr. Co. v. King County,* 941 F.2d 910, 927 (9th Cir. 1991) (chance of reenactment is a significant factor in the evaluation of mootness). In an attempt to meet this burden, the City relies on *Outdoor Media* which, in turn, relies on, *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994). In *Noatak*, the state legislature repealed a law only after the attorney general advised the it that the law was racially discriminatory and illegal. Here, the City has never admitted that the Original Hollywood SUD was illegal. In fact, the City contends that it has every right to enforce and reenact the repealed law. Also, the law at issue in *Noatak* was a more permanent funding provision of state law. Here, the dispute is over local zoning regulations that are constantly in flux, and much easier to change by a bare majority vote of the City Council. In that respect, this case is much more akin to *99 Cents Only Stores v. Lancaster Redevelopment Agency*, 237 F.Supp.2d 1123 (C.D. Cal. 2001), where the court declined to find a case moot even though, in the midst of a lawsuit, an ordinance was repealed.

Furthermore, this Court is well aware of how the City's regulations are constantly changing in response to litigation, from the amendments resulting from *World Wide Rush*, to the ICO's, to the amendment of the Hollywood SUD as a result of this and other cases. The City has repeatedly stated that it desires a judicial resolution of these issues (at Paramount's expense) so that it will know how to proceed with other parties. Yet there is no basis for believing that the existing regulations are any more permanent than those which preceded it. And, of course, there is absolutely no certainty about whether, when, how or by whom these existing regulations will be enforced.

**E. PLAINTIFFS' CLAIMS ARE FULLY RIPE**

Paramount has been trying for years, without success, to obtain supergraphics permits. *See* Declaration of Bradley Folb ("Folb Decl.") ¶¶ 2-6; Declaration of Pamela Anderson In Support of Plaintiffs' Opposition ("Anderson Decl."); Declaration of Pamela Anderson In Support Of Paramount I Appeal ("Anderson P1

Decl."), RJN Ex. F pp. 129-186; Declaration of Luis Magdaleno ("Magdaleno P1 Decl."), RJN Ex. F, pp. 191-95; RJN ¶ 10. It has spent hundreds of thousands of dollars engaging consultants, experts in city permitting, outdoor advertising professionals, engineers and attorneys in attempts to secure the necessary approvals to erect supergraphics. *Id.* It has been to the City's Planning Department, the Los Angeles Department of Building and Safety ("LADBS"), the Fire Department and the CRA countless times. *Id.* These efforts have been ongoing since at least 2005 and the only result has been years of litigation, a civil enforcement lawsuit and, most recently, a claim that Paramount's attempts to get approvals for supergraphics will be "a fight to the death" with the City Attorney. Paramount has been rejected at every possible turn by every possible department. Paramount has been litigating these rights in this very Court since 2007. It is absurd for the City to now assert that Plaintiffs' claims are not ripe for adjudication. *See Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (ripeness requirement less stringent in First Amendment context).

There is no doubt that Plaintiffs' claims are ripe. First, there was a purported supergraphic "ban" during much of the time period alleged in the complaint. Paramount is challenging those regulations and does not have to apply for something that is banned. Second, ripeness requirements are relevant only to "as applied" challenges. *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1232 (9th. Cir. 1994). Plaintiffs' facial challenges are therefore ripe.

Contrary to the City's claim, "project permit compliance" applications are not a requirement for ripeness. The City acknowledges that Paramount was required to obtain an *agreement* with the CRA prior to getting supergraphics—the very procedure challenged here. RJN Ex. B, 61-63 (Hollywood SUD, § 9). There is no point in preparing additional paperwork when one encounters stonewalling and unresponsiveness by the CRA. "When a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive

activity, one who is subject to the law may challenge it facially," even when that person has neither applied for nor been denied a license. *City of Lakewood v. Plain Dealer Publishing Co.*, 46 U.S. 750, 755-56 (1988). Without the agreement of the CRA, any other application would be both irrelevant and futile.

Regardless, the City cannot deny that Paramount submitted applications for a permit. They first did this in 2006. Anderson P1 Decl., RJN, Ex. F, pp. 130-186, Exs. A-D (attaching applications); RJN ¶ 10 (Folb and Anderson declarations from Paramount I, C.D.Cal. Case No. CV-00159-ABC, Docket Nos. 49-51)); Folb Decl. ¶ 3; *see also* FAC ¶¶ 22-24. This alone is sufficient for ripeness.

In 2008, attorney Luis Magdaleno, an outside consultant retained by Paramount to aid in its efforts to obtain supergraphic permits, again approached the City, including City Planner Blake Kendrick at the Planning Department, in an effort to obtain a supergraphic permit. However, Paramount was informed by Ms. Kendrick (whose last name is now Lamb) that no supergraphic permit would be granted to Paramount under any circumstances. Magdaleno P1 Decl., RJN Ex. F at 191-94. Ms. Kendrick explained that, in line with the instructions of the City Attorney, the Planning Department would not approve supergraphic permits unless the applicant removed other signage. *Id.* Ms. Kendrick made very clear that it would be futile for Paramount to submit an application. *Id.* Mr. Magdaleno also approached the CRA for a permit but was ignored. *Id.*

Nonetheless, multiple times between then and 2010, Paramount *again* approached the City for supergraphics permits and, when they were allowed to, submitted application forms that were rejected. RJN Ex. F at 194-95, Magdaleno P1 Decl., ¶¶ 10-11; Anderson Decl., ¶¶ 9-10, Exs. A, B (April 2010 rejected permit applications); Folb Decl. ¶¶ 2-6. Paramount's attempts with the LADBS were rejected because supergraphics were "prohibited." *Id.* Similarly, the Planning Department told Paramount it would not approve any supergraphics but that, in any case, it would need to first go to the CRA to obtain approval. *Id.*; FAC ¶¶ 33, 36-37.

When Paramount went to the CRA, the person in charge refused to even entertain Paramount's requests. *Id.* At absolutely every turn, Paramount was told by the City that it would not be allowed to erect supergraphics. *Id.*; FAC ¶ 33 (alleging that "the City again made it clear that it would not, under any circumstances, allow any supergraphic or off-site signs at the Sunset Boulevard Properties"). The years of denials Paramount received came not from mere filing clerks; they were from people who had the authority to approve or deny permits and/or to exert substantial and effective influence over the permitting process. RJN Ex. F at pp. 130-134, 190-194; RJN ¶ 10; Anderson Decl. ¶ 9; Folb Decl. ¶ 5. Each acted as a gatekeeper that would not allow Paramount to get to the next step. *Id.* On top of this, the City Attorney's Office—that Plaintiffs allege exerts control over these departments—has repeatedly told Paramount that the City will not allow Paramount to erect signage, including in the course of this litigation. Folb Decl. ¶ 5. These are more than sufficient denials to state a ripe claim.

The evidence submitted by the City does not even rebut Paramount's *allegations*. The City's submission of a declaration from one employee who could not find a particular form does not suggest that Paramount was not denied permits. In *National Advertising Co. V. City of Miami*, 402 F.3d 1335 (11th Cir. 2005), relied upon by the City, the plaintiffs approached a zoning clerk once who said the proposed billboards were "too tall." Here, Paramount spent five years being rejected by top-level administrative officials at every turn. Unlike *National Advertising,* Paramount has demonstrated "a conclusive response" that its applications would be denied. The cases the City relies on merely hold that there needs to be a denial that is sufficiently conclusive to justify a judicial resolution. This is certainly the case here. *See* Folb Decl. ¶ 6; Anderson Decl. ¶ 12.

In any case, weighing this evidence is not an appropriate exercise in a motion to dismiss under F.R.C.P 12, but rather an evidentiary issue that Plaintiffs are entitled to explore in discovery. Ms. Lamb who submitted the declaration in support

of the City's Motion, has previously misrepresented facts to the Ninth Circuit when she said that, "at no time did Paramount Contractors & Developers, Inc….ever file a Master Land Use Application with the City Planning Department for supergraphic signs…" RJN Ex. G at 198, ¶ 6. Paramount has, in fact, submitted these applications. Anderson P1 Decl., RJN Ex. F at 148-49, 167-68, 131-32 (attaching applications that Ms. Lamb said were not filed). Her credibility is strained and Paramount is entitled to depose Ms. Lamb, examine the procedures of the Planning Department, and take other discovery to determine if the City's claims are valid.

Even if Plaintiffs did fail to submit some required form, a plaintiff need only demonstrate an actual or imminent injury to establish standing; futile gestures are not required. *See D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008); *Martino v. Santa Clara Valley Water Dist*., 703 F.2d 1141, 1147 (9th Cir. 1983) (submission of permitting documents not required where it is an "idle futile act"). In *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F. 3d 814, 818 (9th Cir. 1996), the Ninth Circuit held that plaintiffs have "standing to challenge [a] permit requirement, even though they did not apply for permits, [where] applying for a permit would have been futile." (finding that further efforts were futile because the City brought state court actions against plaintiffs to compel them to remove their signs and "the ordinance flatly prohibited appellants' off-site signs"). The City's numerous denials and statements over the years confirm the absolute futility and fact that the City would never issue supergraphics permits to Paramount until ordered to do so by a court. RJN Ex F, p. 195, Magdaleno Decl. ¶ 12; Folb Decl. ¶¶ 6; Anderson Decl. ¶ 12.

Finally, regardless of Paramount's permit applications, the City is seeking to enforce the its unconstitutional regulations against Plaintiffs in the State Court Action. City's RJN Ex. 7. Those regulations are the same that are being challenged in this case. This alone gives rise to a ripe claim. *See Wolfson*, 616 F.3d at 1057-60 (potential enforcement proceeding gave rise to a ripe claim).

### F. PLAINTIFFS HAVE ADEQUATELY ALLEGED A TAKINGS CLAIM

Citing *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 185 (1985), the City argues that Plaintiffs' takings claims are not ripe. However, *Williamson County* is inapplicable. Plaintiffs' takings claim is based upon the *Nollan/Dolan* line of cases requiring that the CRA's exactions substantially advance the government's stated purpose of improving the visual environment.[7] Plaintiffs' First Amended Complaint states that "there is no nexus between the fees and conditions exacted by the City and CRA for Plaintiffs to erect supergraphics and any legitimate governmental interests." FAC ¶ 82. Where, as here, plaintiffs assert a *Nollan/Dolan* claim, the "claim is immediately ripe and not subject to the *Williamson County* requirements." *MHC Financing Ltd. Partnership Two v. City of Santee*, 2010 WL 4024780, *7 (S.D. Cal. October 13, 2010); *San Remo Hotel, L.P. v. San Francisco*, 545 U.S. 323, 341 n.23 (2005).

The City also asserts that it cannot be held liable for the CRA's actions. But, the First Amended Complaint *alleges* direct liability for the City (FAC ¶ 82) and Plaintiffs are entitled to prove their allegations. The City cannot ban supergraphics, allow administrative officials to charge an illegal fee and then disclaim responsibility. Plaintiffs will show that the City enacted regulations that allowed City officials and the CRA to impose variable fees on parties wishing to erect supergraphics, and that those fees were not constrained by any standards or regulations having to do with advancing the government's purpose. Plaintiffs will also show that the City influenced and controlled the CRA's "in lieu" fee program in a manner sufficient to give rise to liability by the City as well.

### G. PLAINTIFFS STATED A VALID CHALLENGE TO THE ICO'S

The City admits it illegally employed ICO's, but claims this was an excusable "procedural" error under California Government Code § 65010. However, the 45-

---

[7] *See Nollan v. California Coastal Commission*, 483 U.S. 825 (1987); *Dolan v. City of Tigard*, 512 U.S. 374 (1994).

day requirement for interim "urgency" ordinances in Government Code § 65858 is by no means merely "procedural," it is a limit on the City's power and is the most substantive aspect of the legislation as it provides a crucial time limit on "urgency" legislation that is not required to proceed via the normal legislative process. The code states that "the interim ordinance shall be of no further force and effect 45 days from its date of adoption." The City ignored this crucial restriction, implementing applying its ICO for 90 days, thus rendering it invalid.

The City's argument that prejudice must be shown also fails because it is a factual issue, improper for a motion to dismiss. *See* FAC ¶ 61(f) (alleging invalid action). Though Plaintiffs do not need to allege prejudice at this stage, it may nonetheless exist. It is certainly conceivable that the City Council may have altered the ICO's if proper notice and time for public comment was given. For the City to suggest otherwise is to eviscerate the legislative process and allow the City to ignore the Government Code's constraints upon urgency ordinances.

## H. THE *YOUNGER* DOCTRINE SHOULD NOT BE APPLIED HERE

For *Younger* abstention to be appropriate: (1) there must be ongoing state judicial proceedings, (2) the state judicial proceedings must implicate important state interests, and (3) there must be an adequate opportunity in the state proceedings to raise federal questions. *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). "Younger applies only when the relief the plaintiff seeks in federal court would 'interfere' with the ongoing state judicial proceeding." *Green v. City of Tucson*, 255 F.3d 1086, 1098 (9th Cir.2001).

The City concedes, and Plaintiffs agree, that a declaration that the City's signage bans were or are illegal would "interfere" with the City's civil enforcement action. However, *Younger* abstention is nevertheless inappropriate under the circumstances for several reasons. First, Plaintiffs have sought stays of both this case and the State Court Action. *See* RJN Ex. H. Each time the City refused. In opposition to Plaintiffs' motion to stay the State Court Action, the City argued that

this litigation was different from, and would neither affect nor resolve, the State Court Action. RJN Ex. I. The City is now reversing field again, admitting that this case could resolve the State Court Action. But the State Court Action would not be resolved if the City prevailed in this lawsuit. Accordingly, it does not meet the *Younger* test as the City would still have to prove its case in state court.

Second, the state proceedings were not ongoing when this litigation commenced. In determining whether a state court action was ongoing, "[t]he critical question is not whether the state proceedings are still 'ongoing' but whether the state proceedings were underway before initiation of the federal proceedings." *Wiener v. County of San Diego*, 23 F.3d 263, 266 (9th Cir. 1994). "[I]t is not the filing date of the federal action that matters, but the date when substantive proceedings begin." *M&A Gabaee v. Community Redevelopment Agency of City of Los Angles*, 419 F.3d 1026, 1039 (9th Cir. 2005). The question remains whether there have been any proceedings on the merits in this action. The filing of a motion to dismiss may be considered a proceeding on the merits. *Cottonwood Christian Center v. Cypress Redevelopment Agency*, 218 F.Supp.2d 1203, 1217 n.6 (C.D. Cal. 2002).

This case is far past the embryonic stage. Plaintiffs' complaint in this action was filed nearly two years before the City's civil enforcement action. Since that time, the City filed a motion to dismiss or stay, Plaintiffs' filed this First Amended Complaint and this Court granted the City's motion to stay while denying Paramount's stay motion. Moreover, the City and the CRA have forced Plaintiffs to expend significant resources responding to *two* separate motions to dismiss every one of Plaintiffs' claims. A related case in this Court, Paramount I, has already reached judgment and is on appeal. Dismissing any of Plaintiffs' claims at this point would defy the spirit of *Younger*.

Finally, abstention is inappropriate if bad faith prosecution or harassment is present, or where a statute is flagrantly and patently violative of constitutional prohibitions. *See Huffman v. Pursue, Ltd*., 420 U.S. 592, 611 (1975). As discussed

above, the statutes being enforced are unconstitutional and, with regard to Plaintiffs' Equal Protection claims, the civil enforcement action is in bad faith.

If the Court feels that a stay is warranted, it should use its equitable powers to stay the entire action. *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). There is no need to further complicate the three competing cases between the parties by proceeding in a piecemeal fashion, allowing only part of this case to continue. Such a stay is well within this Court's equitable powers. *Id.*

## I. THERE IS NO NEED FOR A MORE DEFINITE STATEMENT

A Rule 12(e) motion is only proper where the claim is "so indefinite that the defendant cannot ascertain the nature of the claim being asserted." *Id.* A motion for a more definite statement are viewed with disfavor and should be denied where the substance of a claim has been alleged, even though some of the details are omitted. *Boxall v. Sequoia Union High School Dist*., 464 F.Supp.1104, 1113-1114 (N.D. Cal. 1979); *C.B. v. Sonora Sch. Dist*., 691 F.Supp.2d 1123, 1130 (E.D. Cal. 2009). The Complaint here speaks for itself; it is highly detailed, alleging various causes of action and numerous facts to support those claims. The grounds for relief are specific. *See, e.g.,* FAC ¶ 59-61. There is no need for a more definite statement.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the City's Motion or, at a minimum, all Plaintiffs to file an amended complaint.

Dated: January 14, 2011

Respectfully submitted,
LOEB & LOEB LLP
DOUGLAS E. MIRELL
WILLIAM M. BRODY
ERIC SCHWARTZ

By: /s/ William M. Brody
William M. Brody
Attorneys for Plaintiffs