O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARAMOUNT CONTRACTORS AND DEVELOPERS, INC., et al.,<br><br>           Plaintiffs,<br><br>   v.<br><br>CITY OF LOS ANGELES, a California municipal corporation, COMMUNITY REDEVELOPMENT AGENCY OF THE CITY OF LOS ANGELES,<br><br>           Defendants. | CASE NO.: CV 08-5653 ABC (PLAx)<br><br>ORDER RE: DEFENDANT COMMUNITY REDEVELOPMENT AGENCY'S MOTION TO DISMISS |

Pending before the Court is the Community Redevelopment Agency of the City of Los Angeles's (the "CRA's") motion to dismiss, filed on December 22, 2010. (Docket No. 52.) Plaintiffs Paramount Contractors and Developers, Inc., et al. (collectively "Paramount") opposed on January 14, 2011 and the CRA replied on January 24, 2011. The Court finds this matter appropriate for resolution without oral argument and VACATES the Monday, February 7, 2011 hearing date. For the reasons below, the Court GRANTS the motion and DISMISSES the CRA from this case WITH PREJUDICE.

**PROCEDURAL AND FACTUAL BACKGROUND**

As one of many billboard companies pursuing litigation in the City of Los Angeles, Paramount wishes to erect and maintain "supergraphic" signs at two locations in Los Angeles: 6464 and 6565 West Sunset Boulevard.[1] It has brought two lawsuits to compel the City to allow it to do so, based largely on claimed First Amendment violations. The first suit, Paramount Contractors & Developers, Inc. v. City of Los Angeles, No. CV 07-159 ABC (JWJx) (C.D. Cal. filed on Jan. 1, 2007) ("Paramount I"), was brought against only the City and was resolved by summary judgment in the City's favor on June 6, 2008. Paramount appealed that ruling on June 20, 2008.

The instant case was filed on August 28, 2008, again, only against the City, alleging essentially the same facts and claims as in Paramount I, but alleging also that Paramount applied for sign permits and the City rebuffed those applications without comment. The original complaint in this case mentioned the CRA, but did not name it as a defendant or plead any claims against it:

> [T]he City has also created a "Community Redevelopment Agency" ("CRA"), which also has the power to allow certain individuals to escape the complete prohibition on both off-site signs and on supergraphics, generally in exchange for the payment of large amounts of money or other types of consideration. Plaintiff is informed and believes and thereon alleges that, in areas controlled by the CRA, any speaker wishing to construct such a sign must get the approval of the CRA.

(Docket No. 1, Compl. ¶ 22.) Paramount named ten "Doe" defendants, alleging that it was ignorant of the "true names and capacities" of

---

[1] "Supergraphic" signs are "large-format signs projected onto or hung from building walls." World Wide Rush, LLC v. City of Los Angeles, 606 F.3d 676, 682 (9th Cir. 2010) (citing L.A. Municipal Code § 14.4.2).

2

those defendants, but that they were legally responsible for damages alleged in the complaint, either directly or as agents of other defendants, and that they approved the complained-of conduct. (Id. ¶¶ 5—7.)

On October 8, 2008, the City moved to either dismiss or stay this case while the appeal in Paramount I was pending; Paramount opposed the motion. The Court ultimately stayed this case, but that stay was based on the resolution of the then-pending appeal of World Wide Rush, LLC v. City of Los Angeles, 606 F.3d 676 (9th Cir. 2010), not on the resolution of Paramount I.

After World Wide Rush was decided on May 26, 2010, the Court lifted the stay in this case and Paramount filed its First Amended Complaint ("FAC") on October 26, 2010. For the first time, Paramount named the CRA as a defendant. It did not allege that the CRA was replacing a previously named "Doe" defendant, but that the CRA was "believed to be a governmental, or pseudo-governmental agency, located in Los Angeles, California." (FAC ¶ 7.) It did name "Does 1 through 20" as defendants, once again alleging that it was unaware of their "true names and capacities," but that it would amend the FAC once they were ascertained. (FAC ¶ 8.)

Paramount alleges in the FAC that, at the time it sought to erect its signs on the Sunset Properties, the CRA operated within the Hollywood Supplemental Use District (the "Hollywood SUD") to approve supergraphic signs if applicants "complied with the 'sign reduction program' or other exceptions outlined in Sections 7 and 9 of the SUD." (FAC ¶ 20.) "The sign reduction program allowed supergraphics to be erected by a permit applicant if certain types and amounts of other signage were removed by the applicant. The types of signage required

3

to be removed in order to enable the permitting of supergraphics were limited to 'legally permitted billboards, solid panel roof signs, or pole signs.'" (Id.) Paramount claims that the sign reduction program had the effect of "favoring large billboard advertising companies that owned existing billboards, roof signs, and pole signs in the Hollywood SUD which could be used as chips to trade for supergraphic permits." (Id.) Moreover, Paramount alleges that an applicant need not participate in the sign reduction program if the CRA approved the proposed supergraphic sign and the agreement with the CRA "contained fee or other revenue provisions that allowed the CRA to improve the visual environment in a redevelopment project area." (FAC ¶ 21.)

Sometime around August 2006, when Paramount applied for supergraphic sign permits from the City, it was told that it would need CRA approval to erect its signs in the Hollywood SUD. (FAC ¶ 23.) The allegations specific to Paramount's interactions with the CRA are found in two paragraphs in the FAC:

> 24. When Paramount thereafter approached the CRA, the CRA conditioned granting a permit to Paramount on [] receiving a variety of forms of consideration from Paramount including over $1,200,000 in "in lieu" fees and use of the parking facilities at the Sunset Boulevard Properties at night for ten years, which amounted to at least another $1,500,000 in estimated value. The CRA also demanded at least 10 other significant conditions, including a requirement that Paramount agree to allow the CRA to use the fees "at the sole discretion" of the CRA. Similar consideration has not been required from other property owners and advertisers who have been allowed to erect supergraphics in the Hollywood SUD and throughout the city.
>
> 25. In January 2007, after Paramount was rebuffed by the CRA, Paramount filed a lawsuit against the City in the Central District of California challenging some of the City's actions with respect to its previous denial of Paramount's

4

```
                attempts to obtain supergraphic permits [Paramount
                I].
```

(FAC ¶¶ 24—25.)  Although the FAC is silent on any other actions the CRA took against Paramount, Paramount alleges that the CRA allowed other companies to erect signs in the Hollywood SUD at various times from 2008 through 2010.  (FAC ¶ 49(a).)  The rest of the allegations against the CRA consist of legal conclusions that the CRA violated Paramount's rights on various grounds by rejecting its requests to erect supergraphic signs.  (See, e.g., FAC ¶¶ 51, 55, 60, 70, 81.)

Although not entirely clear from the FAC, Paramount appears to allege violations of federal free speech, equal protection, and takings law rights via 42 U.S.C. § 1983, and state constitutional claims for those same violations.

## LEGAL STANDARD

A complaint survives a motion to dismiss under Rule 12(b)(6) if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief," which does not require "detailed factual allegations," but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009).  A claim must be "plausible on its face," which means that the Court can "draw the reasonable inference that the defendant is liable for the mis0conduct alleged."  Id.; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In other words, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (internal quotations and alterations omitted).  Allegations of fact are taken as true and construed in the

light most favorable to the nonmoving party.  See Newdow v. Lefevre, 598 F.3d 638, 642 (9th Cir. 2010).

In analyzing the sufficiency of the complaint, the Court must first look at the requirements of the causes of action alleged.  See Iqbal, 129 S. Ct. at 1947.  The Court may then identify and disregard any legal conclusions, which are not subject to the requirement that the Court must accept as true all of the allegations contained in the complaint.  Id. at 1949.  The Court must then decide whether well-pleaded factual allegations, when assumed true, "plausibly give rise to an entitlement to relief." Id. at 1950.  In doing so, the Court may not consider material beyond the pleadings, but may consider judicially noticeable documents, documents attached to the complaint, or documents to which the complaint refers extensively or which form the basis of the plaintiff's claims in the complaint.  See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

**DISCUSSION**

The CRA moves to dismiss all of Paramount's claims against it on various grounds.  The Court need only address the CRA's statute of limitations argument because it proves to be dispositive.

The CRA contends that Paramount's claims are barred by the applicable two-year statute of limitations.  The CRA argues for an accrual date of August 14, 2006 for Paramount's claims, which was the date on which Paramount and CRA officials met about Paramount's proposed signs and the CRA rebuffed Paramount's requests to erect them.  If true, both the filing dates of the original complaint on August 28, 2008 and the FAC on October 26, 2010 would result in all of Paramount's claims against the CRA being time-barred.

1     Paramount responds that it has sufficiently alleged that its
2 claims accrued in January 2007, not August 14, 2006, when it knew that
3 its signs were finally rejected by the CRA.  Measuring from that date,
4 Paramount argues that the claims alleged against the CRA in the FAC
5 relate back to the date of filing of the original complaint, making
6 those claims timely.  In the absence of relation back, Paramount
7 argues that "continuing violations" from 2008 up through 2010 render
8 its claims against the CRA timely even if measured from the filing
9 date of the FAC.
10     Construing Paramount's allegations in its favor, the Court finds
11 the proper date of accrual of Paramount's claims to be January 2007.
12 However, Paramount has failed to demonstrate that its claims against
13 the CRA in the FAC relate back to the original complaint or,
14 alternatively, that continuing violations existed extending into the
15 limitations period.  As a result, Paramount's claims against the CRA
16 are untimely and must be dismissed.

17     **A.   Accrual Date**

18     The statute of limitations for § 1983 claims is borrowed from the
19 analogous state statute of limitations for personal injury actions; in
20 California, that limitation period is two years.  See Cal. Civ. Proc.
21 Code § 335.1; Silva v. Crain, 169 F.3d 608, 610 (9th Cir. 1999).[2]
22 Accrual of a § 1983 claim is governed by federal law.  See TwoRivers
23 v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).  Under federal law, "a

---

[2] Paramount's California constitutional claims are subject to the same statute of limitations as its § 1983 claims: two years.  See Acuna v. Regents of Univ. of Cal., 56 Cal. App. 4th 639, 645–46 (1997) (applying personal injury statute of limitations to California constitutional claims).

7

claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Id.

Here, the CRA claims that Paramount had reason to know that the CRA would reject its proposed signs on August 14, 2006. That date is not alleged in the FAC; instead, the CRA relies on what it claims is a "judicially noticeable" declaration from Paramount's president, Bradley Folb, submitted in opposition to the City's motion for summary judgment in Paramount I, in which Mr. Folb explained in detail a meeting he had with CRA officials on August 14, 2006. (CRA Request for Judicial Notice ("RJN"), Ex. 2.) The CRA contends that, based on that meeting, Paramount had reason to know that the CRA would not allow its signs. In contrast to these facts, Paramount argues that its claims against the CRA did not accrue until January 2007 because Paramount was not finally rebuffed by the CRA until that date. Paramount's position is based upon the brief allegation in the FAC that, "[i]n January 2007, after Paramount was rebuffed by the CRA, Paramount filed a lawsuit against the City" (referring to Paramount I). (FAC ¶ 25.)

The Court finds that Paramount has alleged the date of accrual as January 2007 because the Folb Declaration filed in Paramount I is not the proper subject of judicial notice. While the fact that this document was filed in Paramount I may be judicially noticed, the truth of the declaration is "subject to reasonable dispute." Fed. R. Evid. 201(b). Because the Court may dismiss claims on statute of limitations grounds "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that" the statute is satisfied, Cervantes v. City of San Diego, 5 F.3d

8

1273, 1275 (9th cir. 1993), the Court accepts Paramount's allegation that final rejection did not occur until January 2007.[3]

**B.   Relation Back**

If the date of accrual of Paramount's § 1983 claims against the CRA was January 2007, Paramount's claims would be timely if measured against the date of filing of the original complaint in August 2008. The CRA was not named as a defendant in the original complaint, so Paramount argues that the addition of the CRA in the FAC as a previously named "Doe" defendant relates back to the original complaint. The Court rejects this contention.

Federal Rule of Civil Procedure 15(c) provides that an amendment to a pleading relates back to the original pleading when, as relevant here, "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P 15(c)(1)(A). Because Paramount's § 1983 claims are governed by California's statute of

---

[3] Paramount further argues that its claims accrued in 2008 and again in 2010 by pointing to a declaration by consultant Luis F. Magdaleno filed in the Ninth Circuit in Paramount I in support of Paramount's response to the City's motion to dismiss the appeal. (Paramount RJN Ex. F.) In that declaration, Mr. Magdelano explains that he called the CRA about permits in June 2008 and again in September 2010, but never received return phone calls. (Id. at 193-95.) These facts are also not subject to judicial notice. Assuming Paramount could add them to the FAC, they still cannot form the basis for the accrual of a cause of action for a § 1983 violation because they do not demonstrate that Paramount had suffered a "new injury" (as Paramount labels it) of a permit rejection within the statute of limitations. At most, the CRA's refusal to return Paramount's phone calls may have been an "inevitable consequence" of the January 2007 rejection of Paramount's signs, but they were not themselves the "operative decision[s]" of permit denials that allegedly violated Paramount's rights. See RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1058 (9th Cir. 2002) ("[I]n determining when an act occurs for statute of limitations purposes, we look at when the 'operative decision' occurred . . . and separate from the operative decisions those inevitable consequences that are not separately actionable.").

limitations law, California law also governs whether the FAC relates back to the original complaint. <u>Ortiz v. City of Imperial</u>, 884 F.2d 1312, 1314 (9th Cir. 1989) (per curiam).

Pursuant to California Civil Procedure Code section 474, "[w]hen the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint . . . and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly." When the complaint is amended to add a named defendant in place of a "Doe" defendant after the statute of limitations has run, "the amended complaint will be deemed filed as of the date of the original complaint provided recovery is sought in both pleadings on the same general set of facts." <u>Austin v. Mass. Bonding & Ins. Co.</u>, 56 Cal. 2d 596, 600 (1961). "Doe" amendments thus relate back when the amendments rest on the same general set of facts, involve the same injury, and refer to the same instrumentality, as the original complaint. <u>See</u> <u>Norgart v. Upjohn Co.</u>, 21 Cal. 4th 383, 409 (1999).

Section 474 is to be "liberally construed." <u>Gen. Motors Corp. v. Super. Ct.</u>, 48 Cal. App. 4th 580, 593 (1996); <u>see also</u> <u>Lindley v. Gen. Elec. Co.</u>, 780 F.2d 797, 801 (9th Cir. 1986). The purpose of section 474 is "'to enable a plaintiff to avoid the bar of the statute of limitations when he [or she] is ignorant of the identity of the defendant.'" <u>Davis v. Marin</u>, 80 Cal. App. 4th 380, 386 (2000). However, "[t]he omission of the defendant's identity in the original complaint must be real and not merely a subterfuge for avoiding the requirements of section 474." <u>Woo v. Super. Ct.</u>, 75 Cal. App. 4th 169, 177 (1999).

1    The parties here do not dispute that Paramount named Doe
2 defendants in the original complaint and alleged § 1983 claims against
3 them, and that Paramount's original complaint and the FAC satisfy the
4 Norgart factors by involving the same facts and injuries.  Instead,
5 the CRA claims that Paramount was never ignorant of the CRA's
6 identity, as required by section 474.  A plaintiff is "ignorant of the
7 name" of a Doe defendant under section 474 when "'he knew the identity
8 of the person but was ignorant of the facts giving him a cause of
9 action against the person . . . or knew the name and all of the facts
10 but was unaware that the law gave him a cause of action against the
11 fictitiously named defendant and discovered that right by reason of
12 decisions rendered after the commencement of the action.'"  Marasco v.
13 Wadsworth, 21 Cal. 3d 82, 88 (1978) (citations omitted).
14    In the original complaint, Paramount alleged that "the City has
15 also created a 'Community Redevelopment Agency' ('CRA'), which also
16 has the power to allow certain individuals to escape the complete
17 prohibition on both off-site signs and on supergraphics, generally in
18 exchange for the payment of large amounts of money or other types of
19 consideration."  (Docket No. 1, Compl. ¶ 22.)  In the FAC, Paramount
20 added the CRA as a defendant and pled specific claims against it for
21 largely the same conduct as alleged in the original complaint, albeit
22 in more detail.  (See, e.g., FAC ¶¶ 24-25.)  Paramount claims that
23 "the CRA would have been added originally, but for Plaintiffs' belief
24 that the CRA was no more than an appendage of the City."  (Opp'n 14.)
25 "Plaintiffs were simply unable to anticipate that the City would later
26 claim it had no liability for the agency it created."  (Opp'n 15.)
27    The Court finds Paramount's claims of ignorance implausible.
28 Contrary to Paramount's arguments, the law is quite clear that a

redevelopment agency is a separate legal entity from the municipality it serves, unless the municipality has declared itself to act in the capacity of a redevelopment agency. See Pac. States Enters., Inc. v. City of Coachella, 13 Cal. App. 4th 1414, 1424 (1993) ("Redevelopment agencies are governmental entities which exist by virtue of state law and are separate and distinct from the communities in which they exist."). Indeed, California law specifically designates redevelopment agencies as independent agencies that can sue and be sued and make and execute contracts and "other instruments necessary or convenient to the exercise of its powers." Cal. Health & Safety Code § 33125; Pac. States, 13 Cal. App. 4th at 1424 (quoting section 33125). Public records reveal that the CRA was created as a legal entity as of April 15, 1948 (Reply RJN, Ex. 4)[4] and there is no allegation that the City Council has designated itself as the CRA.

The two cases cited by Paramount to suggest there is a split of authority on the separateness of a city and its redevelopment agency are not to the contrary. See Nolan v. Redev. Agency of City of Burbank, 117 Cal. App. 3d 494, 499—501 (1981); see also Oceanside Marina Towers Ass'n v. Oceanside Cmty. Redev. Comm'n, 187 Cal. App. 3d 735, 741 (1986). In Nolan, for example, the court found that the redevelopment agency and the city council were the same entity only because the city had declared as much pursuant to Health and Safety Code section 33200, which provides a city's council the authority to designate itself as the redevelopment agency. Nolan, 117 Cal. App. 3d at 499 (taking judicial notice of resolutions designating city council

---

[4] The Court may take judicial notice of this public record. See Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006).

1 as redevelopment agency and concluding that "[i]t thus appears that
2 the City Council of the City of Burbank is the Agency."); see also
3 Oceanside Marina, 187 Cal. App. 3d at 738 (noting that "the Oceanside
4 City Council itself constitutes the Commission" by virtue of Health
5 and Safety Code section 33200).

6  Further, even if there were some question about the law in this
7 area, the City pointed out to Paramount that the CRA was a separate
8 legal entity even before Paramount filed the original complaint in
9 this case.  In the City's reply brief to its motion for summary
10 judgment in Paramount I, which was filed on May 5, 2008, the City
11 explained that it did not control the CRA and it should have been
12 named in the complaint in Paramount I:

> The problem with Paramount's newly disclosed allegations is compounded by the fact that the CRA, which is a state agency, is not a party to this proceeding and, thus, is not in a position to defend itself.  Moreover, as the CRA is not a party, the Court could not fashion relief against the CRA.  At the settlement conference that took place last summer, the City indicated to Paramount that the City could not require the CRA to take any actions because the CRA was a state agency, and not under the City's control.  Paramount indicated that it intended to amend its Complaint to bring the CRA into the lawsuit.  For some reason, however, Paramount never did.

(Reply RJN, Ex. 3 at 5—6.)  Since the original complaint in this case was not filed until three months after this brief was filed in Paramount I, Paramount must have known that it had to add the CRA to the complaint in this case as a separate entity, consistent with existing state law.  Given that Paramount was notified of the legal separateness of the CRA and the City as early as May 2008 (and perhaps even earlier), it strains credulity to suggest that, at the time of

the original complaint, Paramount did not understand the need to name the CRA as a defendant, separate from the City.

The procedure by which Paramount added the CRA also strongly suggests that the CRA was added as a new defendant, rather than a previously unknown Doe defendant. Paramount violated procedural rules by failing to substitute the CRA in the FAC for a previous Doe defendant. See Woo, 75 Cal. App. 4th at 176 ("Among the requirements for application of the section 474 relation back doctrine is that the new defendant in an amended complaint be substituted for an existing fictitious Doe defendant named in the original complaint."). While excusable in the mine-run of cases, see id. at 177, here, in light of the facts above, it suggests that the CRA was not a Doe defendant in the first place. See Anderson v. Allstate Ins. Co., 630 F.2d 677, 683 (9th Cir. 1980). Moreover, Paramount named Does 1 through 20 in the FAC, suggesting that the CRA was not named to replace any one of the Does 1 through 10 named in the original complaint. See id.

Anderson is instructive. In that case, the plaintiffs filed an original complaint for malicious prosecution, abuse of process, and other federal claims, naming insurance companies, their agents and employees, and Does 1 through 50. Id. at 679. The plaintiffs then filed an amended complaint adding three additional defendants, and again naming Does 1 through 50. Id. The claims were time-barred against the newly added defendants unless their addition in the amended complaint related back to the original complaint under section 474. Id. at 682. The Ninth Circuit concluded that the amendments adding the defendants did not relate back to the original complaint because, in adding the new defendants, the plaintiffs merely "added their names to the list of previously-named individual and corporate

14

defendants and retained the listing of defendants Does 1 to 50" and did not identify the new defendants as replacing unknown Doe defendants. Id. at 683. While these technical defects could have been corrected by amendment, the cases "do not allow for the degree of liberality that plaintiffs request" because "'[s]ome discipline in pleading is still essential to the efficient processing of litigation.'" Id.

Here, as in Anderson, Paramount added the CRA as a defendant alongside the previously named City, and did not identify the CRA as a previously unknown Doe defendant. It also named Does 1 through 20 as defendants in the FAC, suggesting that the CRA was, in fact, new. Coupled with the implausibility of Paramount's alleged ignorance of the CRA's separate legal identity, even the most liberal application of section 474 does not permit the FAC to relate back to the original complaint. Thus, the CRA must be treated as a newly added defendant in the FAC and Paramount cannot take advantage of the relation-back doctrine.[5]

**C. Continuing Violations**

Because the relation-back doctrine does not apply, the statute of limitations commenced as of October 26, 2008, two years before the FAC

---

[5] After Anderson, the court in Lindley v. General Electric Co., 780 F.2d 797, 801—02 (9th Cir. 1986), noted that strict compliance with section 474 is not required and allowed an amendment to relate back even though the plaintiffs did not name the new defendants in the amended complaint as previously named Doe defendants. It found Anderson distinguishable because the plaintiffs in Lindley had stated elsewhere that the new defendants were previous Does and did not retain Doe defendants in the amended complaint. Id. at 801—02. Paramount's failures, however, more closely resemble the plaintiffs' failures in Anderson than in Lindley, and, given that Paramount must have known that the CRA was a separate legal entity at the time of the original complaint, push Paramount's case beyond simple excusable neglect.

was filed. As a result, Paramount's last resort to bring its claims against the CRA within the statute of limitations is to argue that it was subject to continuing violations, some of which fell within the limitations period. A continuing violation is properly pled only if the complaint alleges "a pattern or practice of discrimination [which] creates an ongoing violation. . . . [D]iscrete discriminatory acts will not create a pattern of discrimination without more; pattern-or-practice claims cannot be based on 'sporadic discriminatory acts' but rather must be based on 'discriminatory conduct that is widespread.'" Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 701 (9th Cir. 2009). This standard is not satisfied merely when the impact of the past violation is felt within the statute of limitations period. See Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001).[6]

To support its theory of continuing violations, Paramount alleges that "the City and CRA have signed off on agreements and supergraphic permits for other speakers in the Hollywood SUD, while denying Paramount similar rights" (FAC ¶ 40), including permitting signs in 2008, 2009, and 2010 (FAC ¶ 49(a)). This does not, however, demonstrate a continuing violation. A plaintiff "cannot challenge conduct that occurred prior to the limitations period merely by alleging that the conduct was undertaken pursuant to a policy that was still in effect during the limitations period." Cherosky v.

---

[6] Prior to 2002, the Ninth Circuit recognized an alternative theory of continuing violation based upon a "'series of related acts against one individual,'" but the Supreme Court invalidated that theory in the Title VII context. See National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). The Ninth Circuit then extended Morgan to § 1983 claims. See Carpinteria Valley Farms, Ltd. v. Cty. of Santa Barbara, 344 F.3d 822, 828-29 (9th Cir. 2003). Thus, to the extent Paramount relies on this theory to demonstrate a continuing violation, the Court rejects that argument.

Henderson, 330 F.3d 1243, 1248 (9th Cir. 2003) (finding no continuing violation based on maintenance of an alleged discriminatory policy of denying face masks at work because the plaintiffs' claims accrued "when the policy was invoked to deny an individual employee's request"). If the granting of permits to other companies constituted a discriminatory act, Paramount's claims of discrimination based upon the CRA's one act of denying permits to Paramount in January 2007 would never be untimely. See id. at 1248 (explaining time limits would be "eviscerate[d]" if "'the mere existence of a policy is sufficient to constitute a continuing violation[.]'" (citation omitted)).

At most, the granting of future permits to other companies, even if discriminatory, represents the lingering effects of the CRA's allegedly discriminatory denial of Paramount's sign permits; that is not a continuing violation. Knox, 260 F.3d at 1013-14. Thus, Paramount has not alleged a continuing violation that would satisfy the statute of limitations.

**D. CRA as Arm of the City**

The Court briefly addresses a final point raised by the parties and alluded to above: the relationship between the CRA and the City. Paramount argues that it should be entitled to develop facts to demonstrate that the CRA is a de facto arm of the City. If Paramount were correct, then perhaps a timely claim could be alleged against the CRA based on the City's actions. However, as noted above, the CRA and the City are deemed separate legal entities unless the City Council declares itself the redevelopment agency pursuant to state law. See Pac. States, 13 Cal. App. 4th at 1424. The two cases cited by Paramount, Nolan and Oceanside Marina, simply stand for the

1  proposition that a city council may indeed designate itself as the
2  redevelopment agency.  See Oceanside Marina, 187 Cal. App. 3d at 738;
3  Nolan, 117 Cal. App. 3d at 499.  Paramount has cited no authority to
4  suggest that the Court may disregard the legislative judgment of the
5  City not to designate itself as the CRA based on facts that allegedly
6  show that the City and the CRA are "interrelated," in Paramount's
7  words.  The Court will not supplant this legislative judgment with a
8  judicial one without explicit authority enabling it to do so.

## CONCLUSION

Construing the FAC in Paramount's favor, its claims against the CRA accrued in January 2007 for the purpose of measuring the two-year statute of limitations.  Because the addition of the CRA in the FAC did not relate back and Paramount failed to allege continuing violations, all of its claims against the CRA are time-barred. Because any amendment to allege timely claims would be futile, the Court DISMISSES the CRA from the case WITH PREJUDICE.

**IT IS SO ORDERED.**

**DATED: 1/28/2011**  _____
                       **AUDREY B. COLLINS**
                       **CHIEF UNITED STATES DISTRICT JUDGE**